**George KELLY, Plaintiff-Appellant, Cross-Appellee,**

v.

**Jim SMITH, etc., et al., Defendants-Appellees, Cross-Appellants.**

No. 84–3334.

United States Court of Appeals, Eleventh Circuit.

July 9, 1985.

Ben R. Patterson, Tallahassee, Fla., for plaintiff-appellant, cross-appellee.

Mark E. Levitt, Tampa, Fla., F. Scott Pendley, Orlando, Fla., for defendants-appellees, cross-appellants.

Before VANCE, ANDERSON and HENLEY *, Circuit Judges.

* Honorable J. Smith Henley, U.S. Circuit Judge    for the Eighth Circuit, sitting by designation.

R. LANIER ANDERSON, III, Circuit Judge:

George Kelly ("Kelly") appeals from a decision of the district court awarding summary judgment to the City of St. Cloud, Florida ("the City").[1] Kelly argues that his dismissal from employment with the City amounted to a denial of substantive and procedural due process. We affirm in part and reverse in part.

## I. FACTS

Kelly was employed by the City in the Utility Department. In that department, each employee was required to work a certain amount of "standby time." When working standby, an employee was essentially required to be "on call" for emergency calls during the weekends, holidays, and other nonbusiness hours. The controversy in the instant case began on Tuesday, September 15, 1981, when Kelly's supervisor, Mr. Jim Smith ("Smith"), asked Kelly why he was not available the previous evening to respond to a call when he was scheduled to work standby. Kelly responded that he was not scheduled for standby that week.[2] Kelly also stated that he had "other obligations" and would be unable to work standby for the rest of the week. Kelly did not, however, explain the nature of the obligations which precluded him from working standby.

Smith then informed Kelly that unless he agreed to work standby, Smith would be obligated to terminate Kelly's employment with the City. Kelly still declined to work standby and left the worksite.

Upon receiving oral notice of his termination, Kelly immediately went to see the city manager. The city manager informed Kelly that he would have to speak with Smith before he could ascertain the validity of Kelly's discharge. Kelly received written notice of his termination a few days later. The written notice stated that Kelly had been terminated for insubordination and failing to work standby. Upon receipt of the written notice, Kelly went to see the city manager a second time, and the city manager told Kelly that he would uphold Kelly's discharge.

## II. DISCUSSION

On appeal, Kelly argues that the district court erred in awarding summary judgment to the defendants and claims that his discharge from city employment violated both procedural and substantive due process.

Kelly's argument that his discharge violated substantive due process is without merit. Kelly does not allege that he was discharged for an improper motive or that his discharge was for reasons other than those given by the City. *See Hearn v. City of Gainesville*, 688 F.2d 1328, 1332–33 (11th Cir.1982).

The City cross-appeals and argues that the district court erred in concluding that Kelly had a property interest in his continued employment with the City sufficient to entitle him to procedural due process before termination of that employment.[3] The district court held that the only reasonable inference to be drawn from the city employment manual is that Kelly was a career service employee who had a reasonable expectation of continued employment in the absence of just cause for discharge. Thus, the district court held that Kelly did have a

1. Dennis Kelly, the city manager, and Jim Smith, plaintiff Kelly's supervisor, were also joined as defendants and awarded summary judgment. All references to the defendant City should be understood to include defendants Kelly and Smith as well.

2. According to Smith, Kelly knew that he was scheduled for standby but refused to work standby because he was not "first man" or the individual in charge of the two man standby team. Since the district court entered summary judgment against Kelly, we must resolve any doubt as to the existence of a disputed fact in Kelly's favor and against the movant. *Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406 (5th Cir. 1980).

3. Defendants Jim Smith and Dennis Kelly (the city manager) also argue that they are entitled to qualified immunity since their conduct violated no established right of plaintiff Kelly. The district court did not rule on the issue since it held that Kelly received procedural due process. Because there has been no ruling by the district court, we decline to decide the issue at this time.

property interest and was entitled to procedural due process before the termination of his employment. In our opinion, the district court was correct in reaching this result, and no further discussion of the City's cross-appeal is necessary.

We turn to Kelly's procedural due process challenge. In determining whether Kelly's discharge met the minimum requirements of procedural due process, it is appropriate to analyze the issue in two stages: pretermination procedural requirements and post-termination procedural requirements. Addressing first the pretermination requirements, we note that the district court properly looked for guidance to *Thurston v. Dekle*, 531 F.2d 1264, 1273 (5th Cir.1976), *vacated on other grounds*, 438 U.S. 901, 98 S.Ct. 3118, 57 L.Ed.2d 1144 (1978).[4] *Thurston* held that, if adequate pretermination process is provided, a governmental employer may postpone until after dismissal a nonprobationary employee's opportunity to obtain a full evidentiary hearing. With respect to pretermination process, the *Thurston* court held:

> Where a governmental employer chooses to postpone the opportunity of a nonprobationary employee to secure a full-evidentiary hearing until after dismissal, risk reducing procedures must be accorded. These must include, prior to termination, written notice of the reasons for termination and an effective opportunity to rebut those reasons. Effective rebuttal must give the employee the right to respond in writing to the charges made and to respond orally before the official charged with the responsibility of making the termination decision.

531 F.2d at 1273 (footnote omitted). The district court, noting the *Thurston* pretermination requirements of *written* notice and opportunity to respond in *writing*, held that any deviation from the *Thurston* requirements was de minimus.

We need not decide whether the *Thurston* pretermination requirements of *written* notice and opportunity to respond in

*writing* were mandatory and inflexible. It is now clear that *Thurston* must be read in light of *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. ——, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). In *Loudermill*, the Court noted that "the pretermination 'hearing,' though necessary, need not be elaborate." *Id.* at ——, 105 S.Ct. at 1495, 84 L.Ed.2d at 506. " '[S]omething less' than a full evidentiary hearing is sufficient prior to adverse administrative action." *Id.* With respect to the pretermination procedural protection afforded a tenured public employee, the Court held:

> The essential requirements of due process ... are notice and an opportunity to respond. The opportunity to present reasons, *either in person or in writing*, why proposed action should not be taken is a fundamental due process requirement.... The tenured public employee is entitled to *oral or written notice* of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story.

*Id.* at ——, 105 S.Ct. at 1495, 84 L.Ed.2d at 506 (citations omitted and emphasis added). The pretermination hearing "need not definitively resolve the propriety of the discharge." Instead, "[i]t should be an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Id.*

Under *Loudermill*, it is clear that *oral* notice and an opportunity to respond *orally* is sufficient in the pretermination context. In this case, Kelly received both. He received oral notice of the charges against him. Smith discussed with Kelly his refusal to take standby duty. Similarly, Kelly was given ample opportunity to respond orally to the charge. Kelly's primary response to Smith's request that he serve standby for the rest of the week was that he was not scheduled for standby. Smith, however, was the individual charged

---

4. In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Id.* at 1209.

with making up the standby roster, and Smith determined that Kelly was in fact scheduled for standby. Kelly's refusal to work standby after being informed that he was scheduled to do so was the charge which provided the basis of Kelly's discharge. Smith certainly had "reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Loudermill, supra* at ——, 105 S.Ct. at 1495, 84 L.Ed.2d at 506.

Kelly's second response to the charge apparently was that even if he was scheduled, "other obligations" precluded his working standby. Given the City's interest in having employees available to repair hazardous conditions resulting from damaged electrical utility lines, we conclude that Smith had reasonable grounds for determining that Kelly's largely unexplained refusal to work standby justified the discharge. Smith gave Kelly the opportunity to renounce his avowed intentions and retain his job. Kelly, however, declined to do so. Under such circumstances, there were adequate pretermination procedures to serve as "an initial check against mistaken decisions."

Accordingly, we hold that the pretermination procedures afforded Kelly met the requirements of procedural due process as articulated in *Loudermill.*

■ Having concluded that the pretermination procedures were sufficient under the facts of the instant case, we turn next to the post-termination procedures afforded Kelly. The district court held that Kelly's second meeting with the city manager was sufficient to satisfy the demands of procedural due process. We disagree.

The defendants argue that there was no need for a formal post-termination evidentiary hearing since the facts giving rise to the discharge were undisputed. However, the assurance that a full evidentiary hearing will be forthcoming is one of the primary reasons for allowing the abbreviated pretermination procedures. *See Loudermill, supra* at ——, 105 S.Ct. at 1496, 84 L.Ed.2d at 506 ("Our holding rests in part on the provisions in Ohio law for a full post-termination hearing").

Defendants argue that the second meeting with the city manager was an adequate hearing, but they have cited no case in which such an informal meeting has been held to meet the requirements of due process. In *Ferguson v. Thomas,* 430 F.2d 852 (5th Cir.1970), a college professor had numerous informal meetings with and exchanged correspondence with members of the faculty and administrative staff after being notified of his discharge. The court held that the informal meetings and letters failed to meet the requirements of due process. "Due process requires a more formalistic confrontation of facts and positions." *Id.* at 857.

Moreover, where the employee admits the facts which allegedly constitute "just cause" for the discharge, the employee may wish to introduce evidence of the employer's past history which shows that similarly situated individuals received something less than a discharge. *See Loudermill, supra* at ——, 105 S.Ct. at 1494, 84 L.Ed.2d at 504 ("Even where the facts are clear, the appropriateness or necessity of the discharge may not be"). On cross-examination during a deposition, Kelly stated that there were no further witnesses that he would have brought forward to support his claim of wrongful termination. That is not surprising since the facts giving rise to the discharge were largely undisputed. Kelly might, however, wish to present witnesses to support his claim that termination was too severe a punishment.

Finally, Kelly's meeting with the city manager was severely lacking in one respect: Kelly's chief accuser, Smith, was not present at the meeting. Thus, Kelly had no opportunity to confront and cross-examine his accuser in the presence of the decision maker. *Cf. Cowart v. Schweiker,* 662 F.2d 731 (11th Cir.1981) (due process requires that social security claimant be afforded the right to cross-examine those who submit medical reports).

The informal conference in this case simply does not lend itself to a full, fair, and impartial resolution of the controversy. For example, some matters were apparent-

ly left open at the second conference. The city manager agreed to check with other members of Kelly's crew, but the record does not show that this was ever done. The formality that accompanies an evidentiary hearing provides the employee with notice that this is his one and only opportunity to present his case. The decision maker will also more fully appreciate his duty to decide the issue in a fair and impartial manner where a formal setting is provided.

Thus, on the facts of this case, we conclude that Kelly's informal meeting with the city manager was not sufficient to satisfy the requirements of procedural due process in the post-termination context.

### III. CONCLUSION

We conclude that Kelly's substantive due process claim is without merit, and the district court's summary judgment in favor of the City on this issue is AFFIRMED.

With respect to the City's cross-appeal, the district court's conclusion that Kelly had a property interest in his continued employment with the City is AFFIRMED.

We conclude that the pretermination procedures afforded Kelly satisfied the requirements of procedural due process, and to this extent the judgment of the district court is AFFIRMED.

However, with respect to the post-termination procedures, we conclude that Kelly's informal meeting with the city manager failed to meet the requirements of procedural due process. With respect to the post-termination procedures, the judgment of the district court is REVERSED.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.