**Vivian HATCHER, Plaintiff-Appellant,**

v.

**BOARD OF PUBLIC EDUCATION AND ORPHANAGE FOR BIBB COUNTY, et al., Defendants-Appellees.**

No. 86–8049.

United States Court of Appeals, Eleventh Circuit.

Feb. 17, 1987.

Michael D. Simpson, Nat. Educ. Ass'n, Washington, D.C., for plaintiff-appellant.

W. Warren Plowden, Jr., Macon, Ga., for defendants-appellees.

Before KRAVITCH and CLARK, Circuit Judges, and HENDERSON, Senior Circuit Judge.

CORRECTED OPINION

KRAVITCH, Circuit Judge:

After having served for more than a quarter century as a teacher and later a principal in the Macon school system, appellant Vivian Hatcher was removed from her principalship and assigned to the position of media specialist/librarian. Prior to the Macon public school reorganization and the closing of six Macon schools, including the Duresville Elementary School,[1] Hatcher

1. The plan to close several elementary schools was approved by this court. *See Adams v.*

had been principal of the Duresville school for more than three years.[2] Although six principals were displaced as a result of the school closings, only three principal positions became available at the time the schools were closed. As a result, the Board of Public Education and Orphanage for Bibb County (Board) was unable immediately to reassign three of the displaced principals to comparable administrative positions. Appellant and two others were not selected for immediate reassignment to comparable positions.[3]

The focus of appellant's complaint is, however, upon the two additional principalships and one administrative position as a curriculum director that became available soon after the initial reassignments.[4] Superintendent Hagler declined to exercise the special discretion given to him by the Board to recommend the displaced principals for the available positions. Instead, Hagler chose to advertise and use normal applicant screening procedures to fill the posts. Hatcher applied for each of the positions but the superintendent recommended, and the Board selected, three teachers with allegedly less administrative background and no experience as a principal.

Hatcher brought suit for injunctive and declaratory relief under 42 U.S.C. § 1983 against appellees, the Board, the Board members in their official and individual capacities, and Superintendent Hagler. Appellant contends that she was demoted from her position as principal of the Duresville school to the position of media specialist and that this demotion was in violation of her rights to procedural and substantive due process. In addition, appellant contends that she was demoted because she engaged in activity protected by the first amendment.

The district court decided the case on the parties' cross-motions for summary judgment. In a brief, one-page order, the district court granted summary judgment for appellees. The court held that appellant had not been denied any property interest allegedly bestowed by Georgia law because she had not been demoted. The court therefore concluded that appellant had been afforded all the process that was due. The court also stated that appellant's first amendment rights "have in no way been violated."

Appellant filed a motion to alter or amend the judgment to: (1) grant summary judgment for appellant on the due process claim; and (2) deny appellees' motion for summary judgment on the first amendment claim on the ground that genuine issues of material fact remained as to that claim. Appellant then noticed an appeal from the judgment granting summary judgment for appellee.[5] After the district court denied appellant's motion to alter or amend the judgment, appellant noticed an appeal from both the final judgment granting summary judgment for appellees and from the order denying appellant's motion to alter or amend the judgment.

## I.

The due process clause provides that the rights to life, liberty, and property cannot

---

*Board of Pub. Educ.*, 770 F.2d 1562 (11th Cir. 1985).

2. Appellant has been employed by the Bibb County School Board for more than 25 years. She was hired in 1960 as an elementary school teacher. In 1965, she was promoted to the position of librarian. In 1979, appellant moved to an assistant principal position at a Bibb County high school. She served as principal of the Duresville school from 1980 until 1984.

3. Appellant Hatcher was assigned the position of media specialist at Lanier A High School. Rufus Harmon was made a science teacher at

Ballard A Middle School. Freddie Stewart became a physical education teacher at Miller A Middle School.

4. These openings occurred prior to the beginning of the 1984–85 school year. Several more comparable positions became available during the 1984–85 school year. Appellant was not given any of these positions.

5. We note that under Fed.R.App.P. 4(a)(4), this notice of appeal, filed during the pendency of appellant's Rule 59 motion to alter or amend the judgment, had no effect.

be deprived except pursuant to constitutionally adequate procedures. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). The parties agree that appellant's due process claims depend upon her having a property right in continued comparable employment. As the United States Supreme Court stated in *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972):

> [p]roperty interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

Accordingly, we examine appellant's claims to determine whether she had a legitimate claim of entitlement to a comparable administrative position. *See id.* Once it is determined that a property right exists, the next question is "what process is due?" *Loudermill*, 105 S.Ct. at 1493.

### II.

Hatcher identifies two sources that allegedly gave her a legitimate claim of entitlement to employment in a comparable administrative position when the Duresville school closed and other administrative positions became available. One of the sources alleged is "rules or mutually explicit understandings," see *Perry v. Sindermann*, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972), that the displaced principals would be placed in comparable administrative positions. Appellant contends that the Board's policy decision to allow Superintendent Hagler to recommend the displaced principals for administrative positions without going through the normal applicant screening process created a mutually explicit understanding that the principals would be placed in the comparable

positions. In addition, appellant asserted in response to interrogatories that Hagler "repeatedly stated" at three county-wide meetings that "principals displaced by school closings would be placed in administrative positions as these positions become available through attrition or retirements."

■ We find that these events do not rise to the level of a mutually explicit understanding that appellant was to be given a comparable administrative position. It is undisputed that the Board gave Hagler the discretion to circumvent the normal applicant screening process if he decided to recommend one of the displaced principals for a particular position. The Board did not, however, *require* that Hagler circumvent the normal applicant screening process at any point. Moreover, the Board retained the power to reject any recommendation made by the superintendent.

Hagler's statements at the public meetings amount to little more than vague assurances that the Board would attempt to give the displaced principals some type of administrative position at some point in the future. The cases cited by appellant do not support the conclusion that Hagler's statements gave rise to a mutually explicit understanding that appellant and the other displaced principals would be placed in comparable administrative positions. In *Gosney v. Sonora Indep. School Dist.*, 603 F.2d 522 (5th Cir.1979),[6] legally binding board minutes expressly stated that the petitioner would be rehired. In *Stapp v. Avoyelles Parish School Bd.*, 545 F.2d 527 (5th Cir.1977), the petitioner received a letter of intent from the superintendent indicating that the petitioner would be re-employed by the school system once he conveyed his intention to continue in the position for another year. The actions of the school board and superintendent in each of these cases went much further toward creating a "legitimate, non-subjective claim of entitlement," *Gosney*, 603 F.2d at 525, than did the actions of the Board and the super-

---

**6.** The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

intendent in this case. We hold, therefore, that no property right in a comparable administrative position arose by virtue of the conduct of the Board and the superintendent.

■ Appellant also contends that she had a property right in continued employment in a comparable position by virtue of the Georgia Fair Dismissal Law. She argues that this property right was denied in this case because her transfer from a principal position to a media specialist/librarian position constitutes a demotion and that she was not afforded any due process rights.

Georgia law creates a property interest in continued employment for tenured teachers that may not be denied without granting certain substantive and procedural due process rights. O.C.G.A. § 20-2-942(b)(1) provides that: "[a] teacher who accepts a school year contract for the fourth consecutive school year from the same local board of education may be demoted or the teacher's contract may not be renewed only for those reasons set forth in subsection (a) of Code Section 20-2-940." O.C.G.A. § 20-2-940(a) provides several acceptable reasons for demotion including any "good and sufficient cause."[7] A property interest is created by Georgia law whenever the teacher may be demoted or terminated only for cause. *Barnett v. Housing Auth. of Atlanta,* 707 F.2d 1571, 1576 (11th Cir.1983).

In addition to the requirement that the board have good cause for demoting tenured teachers, Georgia law grants a variety of procedural protections that must be provided prior to demotion. Among these is the requirement in O.C.G.A. § 20-2-942(b)(2) that the teacher be given written notice of the board's intention to demote. Following receipt of the written notice, the teacher has the right to be represented by counsel at a full hearing before the board. O.C.G.A. § 20-2-942(b)(2); O.C.G.A. § 20-2-940(b)-(f). The teacher may appeal an adverse decision to the state board of education. O.C.G.A. § 20-2-940(f).

Undisputed facts on this issue leave a narrow question of law for resolution. First, appellees concede that appellant qualified as a teacher who had accepted contracts for four consecutive school years with the Macon school board.[8] Second, there is no dispute that appellant did not receive the procedural due process rights required for demoting a tenured teacher and that the Board had neither "good and sufficient cause," nor any of the other grounds for demotion stated in section 20-2-940(a). Finally, the media specialist/librarian position was one of less "responsibility, prestige and salary" than appellant's former position as principal at Duresville.[9] The issue presented is whether the property right to not be "demoted" without receiving the statutory process rights created

---

7. The other reasons are as follows:
 (1) Incompetency;
 (2) Insubordination;
 (3) Willful neglect of duties;
 (4) Immorality;
 (5) Inciting, encouraging, or counseling students to violate any valid state law, municipal ordinance, or policy or rule of the local board of education;
 (6) To reduce staff due to loss of students or cancellation of programs;
 (7) Failure to secure and maintain necessary educational training.

8. Appellant was tenured as both a teacher and as a principal. She served as principal at the Duresville school for four years, and had been employed by the Board in various lesser positions for more than 20 years. *See supra* note 2.

9. All three elements must be present in order to find a demotion under Georgia law. *Rockdale*

---

*County School Dist. v. Weil,* 245 Ga. 730, 266 S.E.2d 919 (1980). Appellees concede that the media specialist/librarian position was one of less responsibility and prestige than the principal position. Appellees contend, however, that appellant suffered no reduction in salary.

The record indicates that appellant would receive less remuneration in the media specialist/librarian position. Initially, appellant would receive her principal salary. When raises are given by the state, however, appellant would receive only two percent of the raise rather than the full raise. This would impact upon her retirement entitlement because retirement contributions are based upon a percentage of salary. We conclude, therefore, that the media specialist/librarian position was one of less salary even though the effects of the salary cut would not be felt in the short term.

a constitutional due process interest that was denied in this case.

■ The question of whether a tenured teacher who is reassigned to a position of less responsibility, prestige, and salary as a result of a school closing has been "demoted" under Georgia law has not been decided. If appellant was demoted under Georgia law, she was entitled to the due process rights granted in the Georgia Fair Dismissal Law. We do not, however, reach the state law question.[10] Although the underlying substantive interest in not being demoted without being afforded certain process rights may arise by virtue of state law,[11] "federal constitutional law determines whether that interest rises to the level of a 'legitimate claim of entitlement' protected by the Due Process Clause." *Memphis Light, Gas & Water Div. v.*

*Craft,* 436 U.S. 1, 9, 98 S.Ct. 1554, 1560, 56 L.Ed.2d 30 (1978); *Winkler v. County of DeKalb,* 648 F.2d 411, 414 (5th Cir. Unit B 1981).[12] Accordingly, regardless of whether Georgia courts would construe the Fair Dismissal Law as requiring that appellant be afforded the process rights provided thereunder, the relevant inquiry is whether, at the time appellant was transferred to the media specialist/librarian position, the statutory scheme gave her a legitimate claim of entitlement protected by the due process clause.[13]

We conclude that the Georgia statutes did give rise to a legitimate claim of entitlement, and the due process clause applies. Hatcher clearly qualifies as a tenured principal under Georgia law. Her rights as a tenured principal extended to not being demoted except by the specified procedures

10. Appellant raised this pendent state law claim in her complaint. Assuming that the district court had jurisdiction to decide the state law claim, the court was not obligated to do so. *Weissinger v. White,* 733 F.2d 802, 807 (11th Cir.1984). It is not clear from the court's order whether the district court declined to exercise pendent jurisdiction over the state law claim. The unsettled state law question is a matter best left to resolution by the Georgia courts. Moreover, the resolution of this issue will not be dispositive of the substantial constitutional question presented. Under these circumstances, we deem it inappropriate for us to decide the state law question.

11. *See, e.g., Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976); *Barnett v. Housing Auth. of Atlanta,* 707 F.2d 1571, 1576 (11th Cir.1983); *Hearn v. City of Gainesville,* 688 F.2d 1328, 1332 (11th Cir.1982).

12. The Eleventh Circuit, in *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33 (11th Cir.1982), adopted as precedent decisions of the former Fifth Circuit, Unit B, rendered after September 30, 1981.

13. In *Winkler v. County of DeKalb,* 648 F.2d 411, 414 (5th Cir. Unit B 1981), we adopted a portion of the reasoning of the Second Circuit in *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438 (2d Cir.1980). The *Quinn* court summarized the development of the law on this question:

Although the long line of cases under Section 1983 attempting to pour content into [the property] concept is confusing at best, there

appears to be general agreement that a property interest arises only when an individual possesses "a legitimate claim of entitlement" to continued job tenure. The requisite origin of the "entitlement" is unsettled, but it apparently must arise from "existing rules or understandings that stem from an independent source such as state law." The Supreme Court has suggested, on occasion, that state law is the sole vehicle for the creation of property rights, but it has, more recently, instructed that "federal constitutional law determines whether [an] interest rises to the level of a 'legitimate claim of entitlement' protected by the Due Process Clause." Thus, although the primary source of property rights is state law, the state may not magically declare an interest to be *"non* property" after the fact for Fourteenth Amendment purposes if, for example, a longstanding pattern of practice has established an individual's entitlement to a particular governmental benefit.

*Id.* at 447–48 (citations omitted).

It follows that the question of whether a constitutionally cognizable legitimate claim of entitlement exists must be determined on the basis of the statutes, rules, practices, and interpretations existing *at the time of the alleged deprivation.* An authoritative construction of the Georgia statutes by the state courts rendered *after* the alleged deprivation would be persuasive but not binding on the question of the legitimacy of the grievant's claim of entitlement. To hold otherwise would allow the state to "wrest a governmental benefit from an individual through definitional gamesmanship." *Id.* at 448.

and for the specified reasons. Appellant's legitimate claim of entitlement to a comparable position arises from the statutory definition of what constitutes a demotion. O.C.G.A. § 20–2–943(a)(2) defines "demotion" in terms of a transfer "from one position *in the school system* to another position *in the school system* having less responsibility, prestige, and salary." (emphasis added). *See Rockdale County School Dist. v. Weil,* 245 Ga. 730, 266 S.E.2d 919 (1980). The media specialist/librarian position was a position in the school system having less responsibility, prestige, and salary.[14] Nothing in the Georgia statutes or court decisions would indicate that the plain language of this provision does not apply where the transfer to a position of less responsibility, prestige, and salary within the school system is occasioned by closing a school and eliminating a position.[15] Accordingly, even if Georgia courts were later to construe this section to be inapplicable to this situation, the law at the time of appellant's reassignment gave her a legitimate claim that she was entitled to remain in a position of comparable prestige, responsibility and salary. This legitimate claim of entitlement may not be denied without satisfying constitutional due process requirements.

**14.** *See supra* note 9.

**15.** Appellees' argument that appellant was not demoted because she was not re-assigned on the basis of her performance is contrary to the Georgia statutory scheme. O.C.G.A. § 20–2–940(a)(6) provides that a reduction in staff due to "loss of students or cancellation of programs" are valid grounds for termination, suspension, or demotion. Even when a demotion is necessitated by loss of students or program cancellations, however, the teacher who is to be demoted is entitled to the procedural due process rights of written notice, a hearing, counsel, and an appeal. This provision rebuts appellees' contention that process rights somehow disappear through a "hiatus" in the statutory scheme when the teacher is demoted for reasons unrelated to the teacher's performance.

**16.** We have, on numerous occasions, considered the due process requirements in the context of public employee termination. *See, e.g., Sharpley v. Davis,* 786 F.2d 1109 (11th Cir.1986) (sus-

## III.

Having concluded that appellant had a legitimate claim of entitlement to a comparable administrative position, we next decide what process was due to appellant. Appellant's claims involve alleged deprivations of both substantive and procedural due process. Accordingly, we must examine: (1) whether the procedures followed by the school authorities comported with due process requirements; and (2) if so, whether the action taken is supported by substantial evidence. *Holley v. Seminole County School Dist.,* 755 F.2d 1492, 1496 (11th Cir.1985).

In addressing the procedural due process issue, we find that none of our prior cases have considered the constitutional due process requirements in this factual situation.[16] We are cognizant of Justice Frankfurter's acknowledgment that:

> "[D]ue process," unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances. Expressing as it does in its ultimate analysis respect enforced by law for that feeling of just treatment which has evolved through centuries of Anglo-American constitutional history and civilization, "due process" cannot be impris-

pension and discharge of tenured public school principal); *Kelly v. Smith,* 764 F.2d 1412 (11th Cir.1985) (discharge of city utility worker); *Harden v. Adams,* 760 F.2d 1158 (11th Cir.) (termination of tenured teacher at state university), *cert. denied,* —— U.S. ——, 106 S.Ct. 530, 88 L.Ed.2d 462 (1985); *Holley v. Seminole County School Dist.,* 755 F.2d 1492 (11th Cir.1985) (termination of tenured public school teacher); *Barnett v. Housing Auth. of Atlanta,* 707 F.2d 1571 (11th Cir.1983) (discharge of public housing authority employee); *Hearn v. City of Gainesville,* 688 F.2d 1328 (11th Cir.1982) (lay off of city employee); *Glenn v. Newman,* 614 F.2d 467 (5th Cir.1980) (dismissal of city police officer); *Thurston v. Dekle,* 531 F.2d 1264 (5th Cir.1976) (suspension of city employees), *vacated on other grounds,* 438 U.S. 901, 98 S.Ct. 3118, 57 L.Ed.2d 1144 (1978), *reinstated in part,* 578 F.2d 1167 (5th Cir.1978); *Ferguson v. Thomas,* 430 F.2d 852 (5th Cir.1970) (termination of public university teacher). We find, however, that the teacher termination cases are not directly applicable to the facts of this case.

oned within the treacherous limits of any formula.

*Joint Anti-Fascist Refugee Comm. v. McGrath,* 341 U.S. 123, 162, 71 S.Ct. 624, 643, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring).

This conception of the versatile nature of the due process requirement[17] is reflected in the Supreme Court's more recent decision in *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). In *Loudermill,* the Court adopted a balancing of interests approach to determining what form of hearing is required prior to administrative action. 105 S.Ct. at 1495. The Court considered the significance of the private interest in retaining employment, the value for the employee to be able to present his or her side of the case, and the governmental interest in immediate action. *Id.* at 1494–95.

We consider it appropriate to analyze the issue in this case in two stages: pre-placement and post-placement procedural requirements for the initial reassignments when the schools were to be closed and several positions eliminated; and pre-placement and post-placement procedural requirements for comparable positions that subsequently became available. *See Kelly v. Smith,* 764 F.2d 1412, 1414 (11th Cir. 1985). Our analysis of the due process requirements is limited to the special circumstances of this case: where a tenured teacher held a constitutional property interest in continued comparable employment and was demoted as a result of the elimination of her position.

■ Applying the *Loudermill* balancing of interests approach to these facts, we conclude that the Board was not constitutionally required to grant appellant a hearing at the time the schools were closed and the initial reassignments made. Affording appellant and all other tenured teachers who lost their positions as a result of a school closing a hearing prior to placement in another position would cause significant delays and impose substantial administrative burdens upon the school system. The governmental and public interest in avoiding this delay and expense is substantial. Moreover, the individual interest in having such hearings is minimal because in many situations, as in this case, the Board is simply forced to make a choice between two or more equally qualified tenured teachers. The Board does not necessarily have "cause" for selecting one displaced teacher over another. Thus, a hearing at this stage would serve little purpose. Although a pre-placement hearing might be required by state law,[18] we conclude that such a hearing is not constitutionally required because the valid government interest at stake justifies postponing the hearing until after the placement. *Fuentes v. Shevin,* 407 U.S. 67, 82, 92 S.Ct. 1983, 1995, 32 L.Ed.2d 556 (1972); *Boddie v. Connecticut,* 401 U.S. 371, 378–79, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971); *Harden v. Adams,* 760 F.2d 1158, 1167 (11th Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 530, 88 L.Ed.2d 462 (1985).

■ Once the initial reassignments have been made, appellant and the other displaced teachers who held a constitutional property interest in continued comparable employment that was denied by virtue of their placement in a lesser position are entitled to obtain a hearing regarding any positions that were assigned to individuals who did not hold a property interest in the position. The Board may not elect to elevate another candidate without being prepared to grant a full post-placement hearing to those who hold a constitutional property interest in employment in such a position. As we stated in *Kelly v. Smith,* 764 F.2d 1412, 1415 (11th Cir.1985), "the assurance that a full evidentiary hearing will be forthcoming is one of the primary reasons

---

**17.** *See also Ferguson v. Thomas,* 430 F.2d 852, 856 (5th Cir.1970) ("the standards of procedural due process are not wooden absolutes. The sufficiency of procedures employed in any particular situation must be judged in the light of the parties, the subject matter and the circumstances involved.").

**18.** *See supra* note 10 and accompanying text.

for allowing the abbreviated pretermination procedures." *See Loudermill*, 105 S.Ct. at 1496. Such procedures are particularly essential in this case where a pre-placement hearing is not constitutionally required.

We conclude, therefore, that the Board must provide written notice identifying the reasons why the demoted teacher was not assigned to the comparable position along with a list of any adverse witnesses. A reasonable time after receipt of this notice, the demoted teacher is entitled to request a meaningful hearing in which he or she is given an opportunity to confront adverse witnesses and present his or her own defenses and witnesses. *See Kelly v. Smith*, 764 F.2d 1412 (11th Cir.1985); *Winkler v. County of DeKalb*, 648 F.2d 411 (5th Cir. Unit B 1981). We believe that this process is due because "[t]he substance of due process requires that no instructor who has an expectancy of continued employment be deprived of that expectancy by mere ceremonial compliance with procedural due process." *Ferguson v. Thomas*, 430 F.2d 852, 857 (5th Cir.1970).

Appellant's complaint in this case is not, however, focused upon a denial of due process rights with respect to the initial reassignments. The record indicates that the three comparable positions that were available after the school closings were filled by displaced principals who were similarly situated to appellant. Accordingly, under the due process requirements identified above, appellant received all the procedural process that was constitutionally required up to that point. The question remains as to what process, if any, was due for positions that opened up subsequent to the closings for which appellant and the other two still displaced principals were passed over.

The competing interests involved changed dramatically when, after the closings and initial reassignments, the Board sought to place others ahead of appellant. Appellant's property interest in employment comparable to her principal position began to be denied from the time she was placed in the media specialist/librarian position. The Board continues to deny that interest as long as she retains the right and remains in the lesser employment position. The private interest in being restored to a comparable position is substantial. The governmental interest in immediately filling vacancies does not outweigh this individual interest where the school reorganization is complete. Accordingly, appellant was entitled to a legitimate opportunity to contest the continued deprivation of her property before the decision to continue that deprivation was finalized. *See Harden v. Adams*, 760 F.2d 1158, 1167 (11th Cir.1985).

As to the nature of the pre-placement process that is required, we find that the facts of this case warrant more stringent due process requirements than those identified as adequate in *Loudermill*. The pretermination process found to be due in *Loudermill* and the other teacher termination cases was influenced by the substantial government interest in "quickly removing an unsatisfactory employee." *Loudermill*, 105 S.Ct. at 1496. No such interest is present in this situation. Although oral notice and an opportunity to respond orally is sufficient in the pretermination context under *Loudermill*, see *Kelly v. Smith*, 764 F.2d 1412, 1414 (11th Cir.1985), we conclude that when the superintendent decided to reject appellant's application for each of the three comparable administrative positions that became available after she had been assigned to the media specialist/librarian position, appellant was entitled to written notice of the reasons why she was not selected. *See Glenn v. Newman*, 614 F.2d 467 (5th Cir.1980). Appellant then was entitled to an effective opportunity to rebut those reasons. "Effective rebuttal must give the employee the right to respond in writing to the charges made and to respond orally before the official charged with making the ... decision." *Thurston v. Dekle*, 531 F.2d 1264, 1273 (5th Cir.1976), *vacated on other grounds*, 438 U.S. 901, 98 S.Ct. 3118, 57 L.Ed.2d 1144 (1978), *reinstated in part*, 578 F.2d 1167 (5th Cir.1978).

Such pre-placement procedures are required even though a wrongful failure to place appellant in an available position might be corrected by subsequent action because "no later hearing and no damage award can undo the fact that the arbitrary taking that was subject to the right of procedural due process has already occurred. '[The Supreme] Court has not ... embraced the general proposition that a wrong may be done if it can be undone.'" *Fuentes v. Shevin*, 407 U.S. 67, 82, 92 S.Ct. 1983, 1995, 32 L.Ed.2d 556 (1972).

After the subsequent vacancies were filled and appellant's application rejected, she was entitled to a full hearing as described above. *See Kelly v. Smith*, 764 F.2d 1412 (11th Cir.1985); *Ferguson v. Thomas*, 430 F.2d 852 (5th Cir.1970). Such a hearing is essential to assure that appellant's substantive due process rights are protected.

■ There is no doubt that appellant's procedural due process rights were violated under these standards. She tried in vain to learn the reasons why she had not been selected for any of the comparable administrative positions for which she had applied. She was given no statement of reasons and no proper hearing. The Board may not use the unusual circumstance of a school reorganization as a vehicle for demoting teachers that it could not otherwise demote, without meeting substantive and procedural due process requirements.

We conclude, therefore, that appellant is entitled to summary judgment on her procedural due process claim. We therefore REVERSE the judgment of the district court granting summary judgment for appellees on the procedural due process claim and REMAND the issue to the district court for entry of a judgment declaring that appellant's procedural due process rights were violated when she was not provided notice and a hearing regarding the Board's decision to reject her application for the comparable administrative positions. In addition, the district court shall enter an injunction directing appellees to comply in the future with the procedural requirements outlined above whenever the Board decides to reject appellant's application for a position comparable to that of a principalship.

## IV.

As to appellant's substantive due process claim, we conclude that summary judgment was premature. The district court's conclusion that appellees were entitled to summary judgment on the substantive due process claim rests upon the mistaken premise that appellant did not have a property interest. Given our conclusion that appellant did have a legitimate claim of entitlement to comparable employment, a genuine factual dispute exists as to whether the deprivation of that interest was by "an improper motive and by means that [are] pretextual, arbitrary and capricious." *Barnett v. Housing Auth. of Atlanta*, 707 F.2d 1571, 1577 (11th Cir.1983); *Hearn v. City of Gainesville*, 688 F.2d 1328, 1332 (11th Cir. 1982). Due to the lack of any statement of reasons or a hearing as to why appellant continues to be rejected for principal positions, the district court should have proceeded to trial on this issue. We therefore REVERSE the judgment granting summary judgment for appellees on the substantive due process issue and REMAND this issue to the district court.

## V.

It is impossible to discern upon what grounds the district court relied in determining that "[p]laintiff's first amendment rights have in no way been violated." Appellant raises two claims of first amendment violations: first, that the superintendent refused to recommend appellant for one of the vacant principalships because of appellant's activities in connection with the protests to the school closing plan; and second, that the superintendent refused to recommend appellant for one of the vacant principalships because appellant attempted to bring her minister and a school board member to certain meetings at which appellant's job placement was to be discussed.

We conclude that summary judgment for appellees was improper as to both claims because genuine issues of material fact remain.

In *Mt. Healthy City School District v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), the Supreme Court set out the standard for judging public school teachers' first amendment claims. Under *Mt. Healthy*, the court first must determine whether the plaintiff has shown that his or her activity is protected by the first amendment. 429 U.S. at 287, 97 S.Ct. at 576; *Holley v. Seminole County School Dist.*, 755 F.2d 1492, 1500 (11th Cir.1985). After establishing that the conduct is protected, the plaintiff bears the initial burden of proving that the protected conduct was a substantial or motivating factor in the decision to take adverse employment action against the plaintiff. *Holley*, 755 F.2d at 1500. If the plaintiff carries this burden, the burden shifts to the board to show by a preponderance of the evidence that the same employment decision would have been rendered even in the absence of the protected conduct. *Mt. Healthy*, 429 U.S. at 287, 97 S.Ct. at 576. Only the question of whether the conduct is protected by the first amendment is a question of law; the

other elements are questions of fact. *Holley*, 755 F.2d at 1500–01; *Sykes v. McDowell*, 786 F.2d 1098, 1103 (11th Cir.1986). Accordingly, under *Mt. Healthy*, we first decide whether appellant engaged in any constitutionally protected activity.

Appellees contend that the *Mt. Healthy* standards must be read in light of the Supreme Court's decisions in *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), and *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). *Connick* refined the *Mt. Healthy* analysis for evaluating public employees' free speech claims. Under *Connick*, unless a public employee's conduct involved a matter of "public concern," examining the propriety of the employer's action under the first amendment is inappropriate. *Connick*, 461 U.S. at 146–47, 103 S.Ct. at 1690; *Eiland v. City of Montgomery*, 797 F.2d 953, 955 (11th Cir.1986); *Ferrara v. Mills*, 781 F.2d 1508, 1512 (11th Cir.1986).

Although the proper juxtaposition of *Pickering*, *Mt. Healthy* and *Connick* in public employee speech cases has been somewhat unclear,[19] we need not attempt

---

**19.** In *Connick*, the Court apparently applied a two-step analysis. First, the Court determined whether the employee expression could "be fairly considered as relating to any matter of political, social, or other concern to the community." 461 U.S. at 146, 103 S.Ct. at 1690. If the employee's speech could not be so characterized, the first amendment inquiry is at an end. *Id.* Second, if the speech was on a matter of public concern, the Court applied the *Pickering* balancing test to determine if the adverse employment decision was justified in light of the first amendment interests at stake. The Court cautioned, however, that "we do not deem it either appropriate or feasible to attempt to lay down a general standard against which all [public employee] statements may be judged." 461 U.S. at 154, 103 S.Ct. at 1694.

This Circuit's post-*Connick* decisions have attempted to reconcile *Pickering, Connick,* and *Mt. Healthy*. In *Leonard v. City of Columbus*, 705 F.2d 1299 (11th Cir.1983), *cert. denied*, 468 U.S. 1204, 104 S.Ct. 3571, 82 L.Ed.2d 870 (1984), the court held that a public employee allegedly discharged for engaging in speech activity must first demonstrate that the allegedly protected speech was a substantial or motivating factor in their dismissal. 705 F.2d at 1304. The *Leonard*

court then applied the *Pickering* balancing test to determine whether the speech activity was protected. Whether the speech might be characterized as speech on "public issues" was a factor in the balance. *Id.* Once the plaintiff meets this burden of proving that protected speech was a substantial or motivating factor in adverse employment action, the burden shifts to the defendant to show by a preponderance of the evidence that the adverse action would have occurred in the absence of the protected speech. In *Renfroe v. Kirkpatrick*, 722 F.2d 714 (11th Cir.), *cert. denied*, 469 U.S. 823, 105 S.Ct. 98, 83 L.Ed.2d 44 (1984), we held that the first step in assessing a public employee's free speech claim is to determine whether the speech was related to a matter of public concern. Finding that the employee's speech was not related to a matter of public concern, the *Renfroe* court held that the district court properly entered judgment for the defendants "on the ground that there was no violation of plaintiff's federal rights." *Id.* at 715. The court in *Berry v. Bailey*, 726 F.2d 670 (11th Cir.1984), *cert. denied*, 471 U.S. 1101, 105 S.Ct. 2326, 85 L.Ed.2d 844 (1985), applied the *Pickering* balancing test in deciding that a discharged public employee's first amendment

to resolve this question in this case because we hold appellant's claims are based upon freedom of association.[20] Appellant's first amendment complaint, in essence, alleges: (1) that appellant was denied a comparable position because she associated with parents and others who protested the board's plan to close Duresville and several other Macon schools; and (2) that appellant was denied a comparable position because she brought her minister and a school board member to her meeting with the assistant superintendent. We conclude that this constitutes constitutionally protected associational activity.

■ Appellees admit that appellant was present at the public meetings at which parents protested the school closings. The record indicates that appellant was present at a Board meeting where protesters marched and carried signs expressing opposition to the school closings.[21] Appellant also was present at three public meetings held by the Board at which various individuals expressed their opposition to the school closings.[22] Appellant attended all Duresville Parent Teacher Organization (PTO) meetings at which parents discussed their opposition to closing Duresville and made plans for making their opposition known to the Board and the superintendent.[23]

■ Appellant's associational activity is no less protected because appellant chose to add the support of her silent presence to the efforts of those who took a more active role. As the Supreme Court stated in *Roberts v. United States Jaycees*, 468 U.S. 609, 104 S.Ct. 3244, 3252, 82 L.Ed.2d 462 (1984):

rights were not violated. In *Holley v. Seminole County School Dist.*, 755 F.2d 1492 (11th Cir. 1985), the court indicated that the *Pickering* balancing test is to apply in determining whether the speech is protected. After establishing that the speech activity is protected, the plaintiff bears the initial burden of proving that the conduct was a substantial or motivating factor in the adverse employment action. *Id.* at 1500. The burden then shifts to the employer to show by a preponderance of the evidence that the same employment action would have been taken without the protected activity. *Id.*

This Circuit's most recent explications of the free speech analysis in the public employment context was in *Ferrara v. Mills*, 781 F.2d 1508 (11th Cir.1986), and *Eiland v. City of Montgomery*, 797 F.2d 953 (11th Cir.1986). *Ferrara* examined first whether the employee's speech can fairly be characterized as constituting speech on a matter of public concern. If the speech could not be so characterized, the first amendment inquiry is at an end. If the plaintiff makes this initial showing, the *Ferrara* court looked to whether the plaintiff had shown that the speech was a substantial or motivating factor in the employment decision. When both of these showings are made, *Ferrara* indicates that courts should apply the *Pickering* balancing test to determine "whether the adverse employment decision was justified." 781 F.2d at 1512. The court stated unequivocally that "[t]he *Pickering* balance is not triggered unless it is first determined that the employee's speech is constitutionally protected." *Id.* at 1513–14. In *Eiland*, the court followed *Ferrara* in concluding that the *Pickering* balancing test is not employed to determine whether the speech is constitutionally protected. 797 F.2d at 956 n. 4. Instead, if the

speech can be fairly characterized as relating to a matter of public concern, the speech is constitutionally protected irrespective of any balancing of interests.

**20.** In *Berry v. Bailey*, 726 F.2d 670, 673 (11th Cir.1984), *cert. denied*, 471 U.S. 1101, 105 S.Ct. 2326, 85 L.Ed.2d 844 (1985), the court rejected an attempt to characterize the appellant's case as "a traditional freedom of association case." In attempting to determine whether the freedom of speech or the freedom of association line of cases was most instructive, the court looked to "the manner in which [the plaintiff's] 'beliefs' became known to the outside world." 726 F.2d at 673 n. 4.

**21.** Appellant sat in the parking lot on the hood of her car while the demonstrating parents carried signs, marched and sang. Assistant Superintendent Culpepper spoke with appellant during this demonstration. The local media gave extensive coverage to the protest; including a sign declaring "Close Hagler's Office—Leave Duresville Open!!!"

**22.** The president of the Duresville Parent Teacher Organization (PTO) spoke in opposition to closing Duresville at one of the meetings as did other parents and members of the Duresville PTO. Appellant sat with the family of the president of the Duresville PTO at one of the meetings.

**23.** The plans included letters to the editor of the local newspaper, picketing the Board office, and telephone calls to the superintendent and Board members.

An individual's freedom to speak, to worship, and to petition the Government for the redress of grievances could not be vigorously protected from interference by the State unless a correlative freedom to engage in group effort toward those ends were not also guaranteed.... Consequently, we have long understood as implicit in the right to engage in activities protected by the First Amendment a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends.

This right to freedom of association extends to public employees being able to engage in associative activity without retaliation. *Smith v. Arkansas State Highway Employees, Local 1315*, 441 U.S. 463, 465, 99 S.Ct. 1826, 1828, 60 L.Ed.2d 360 (1979) ("the public employee surely can associate and speak freely and petition openly, and he is protected by the First Amendment from retaliation for doing so.") (per curiam); *Wilson v. Taylor*, 733 F.2d 1539, 1542 (11th Cir.1984); *Gavrilles v. O'Connor*, 579 F.Supp. 301, 304 (D.Mass.1984).

 Appellees claim that appellant's attempts to bring others to her meeting with the superintendent and his assistant enjoyed no first amendment protection after *Connick* because the meetings were regarding a purely private concern: appellant's job assignment. We conclude, however, that *Connick* is inapplicable to freedom of association claims. *See Gavrilles v. O'Connor*, 579 F.Supp. 301, 304 n. * (D.Mass.1984). We do not view *Connick* as a retreat from *NAACP v. Alabama*, 357 U.S. 449, 460–61, 78 S.Ct. 1163, 1171, 2 L.Ed.2d 1488 (1958), in which Justice Harlan wrote for the Court: "it is immaterial whether the beliefs sought to be advanced

by association pertain to political, economic, religious or cultural matters ... state action which may have the effect of curtailing the freedom to associate is subject to the closest scrutiny." Indeed, even a public employee's association choices as to whom to date enjoy constitutional protection. *Wilson v. Taylor*, 733 F.2d 1539 (11th Cir.1984). In short, application of a requirement that associational activity relate to a matter of public concern in order to be constitutionally protected would overturn Supreme Court and Eleventh Circuit [24] jurisprudence and exact a substantial toll upon first amendment liberties. We conclude that no such requirement applies in this context and that appellant has satisfied the *Mt. Healthy* requirement that she demonstrate that she engaged in protected activity.

 Genuine issues of material fact remain, however, as to whether appellant's associational activity was a substantial or motivating factor in the superintendent's decisions to refuse to place appellant in the comparable positions that became available. The burden is on appellees to demonstrate that viewing the evidence and all factual inferences in the light most favorable to appellant, there is no genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). As a general rule, "summary judgment is particularly inappropriate in first amendment cases." *Ferrara v. Mills*, 781 F.2d 1508, 1515 (11th Cir.1986). Summary judgment was inappropriate as to the first amendment issues in this case because the parties dispute the superintendent's motivation in failing to recommend appellant for a comparable position.[25]

24. *See Hastings v. Bonner*, 578 F.2d 136 (5th Cir.1978) (associational activity of teacher bringing outsiders to meeting with superintendent is constitutionally protected).

25. *Hastings v. Bonner*, 578 F.2d 136 (5th Cir. 1978), supports our conclusion that summary judgment is improper where a teacher is discharged allegedly in retaliation for attempting to bring others to a meeting with the superintendent. The *Hastings* court stated that "[i]f the

court does find [the superintendent] did not renew Mrs. Hazlett's contract solely, or even partially, because she brought two unannounced representatives to his office and requested their presence at the meeting, the decisional law compels a conclusion that Mrs. Hazlett has been denied her First Amendment liberty to associate." *Id.* at 140–41. In this case, as in *Hastings*, there is evidence that the superintendent strongly objected to appellant's action

The trier of fact on remand should determine whether appellant's associational activity was a substantial or motivating factor in the superintendent's decision not to recommend appellant for any of the comparable administrative positions that became available. If so, the trier of fact must determine if a preponderance of evidence supports the conclusion that appellant would not have been given a comparable position even in the absence of her associational activities. Finally, the factfinder should determine whether the balance between appellant's interest in engaging in the associational activity, and the state's interest as an employer in promoting efficient operation of its school systems, supports the challenged action. *See Pickering v. Board of Educ.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734–35, 20 L.Ed.2d 811 (1968).[26] Because genuine issues of material fact remain as to these issues, the district court's order granting summary judgment for appellees on appellant's first amendment claims is reversed and the claims are remanded for trial.

REVERSED and REMANDED.

---

of bringing unannounced representatives to a meeting.

26. The balancing of interests is necessary because "[t]he right to associate for expressive purposes is not … absolute." *Roberts v. United States Jaycees,* 468 U.S. 609, 104 S.Ct. 3244, 3252, 82 L.Ed.2d 462 (1984). As is the case with free speech, the fact that a public employee is retaliated against for exercising constitutionally protected associational rights does not *automatically* render the retaliatory action unconstitutional. *See Ferrara v. Mills,* 781 F.2d 1508, 1513 (11th Cir.1986).