[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-15353
Non-Argument Calendar
_____

D.C. Docket No. 3:14-cv-00293-RV-EMT


ELLIS JOEY BOUDREAUX,

                                        Plaintiff - Appellant,

versus

RONALD M. MCARTOR,
Individually,
CITY OF MARY ESTHER, FLORIDA,

                                        Defendants - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(March 2, 2017)

Before HULL, WILSON, and JORDAN, Circuit Judges.

PER CURIAM:

Ellis Joey Boudreaux appeals the district court's grant of summary judgment in favor of Ronald McArtor and the City of Mary Ester, Florida, on his First Amendment retaliation claim brought under 42 U.S.C. § 1983. Upon review of the record and consideration of the parties' briefs, we affirm.

## I

Mr. Boudreaux began working for the City in 1997 as a firefighter under the supervision of Fire Chief Ronald McArtor. In April of 2007, he was given the job of Fire Inspector, which he later requested to leave because he was not permitted to earn overtime pay and did not have sufficient time for additional outside work.

In January of 2010, Mr. Boudreaux was promoted to the position of Shift Captain. Mr. Boudreaux alleges that in January of 2013, he learned that Chief McArtor and Assistant Chief Frank Matheny wanted to demote him to make the position available for Assistant Chief Matheny's son. In October of 2013, Mr. Boudreaux was transferred back to the position of Fire Inspector, which he considered a demotion. He alleges that Chief McArtor ordered him to take the position because it needed to be filled.

On October 7, 2013, Judy Boudreaux, Mr. Boudreaux's mother, met with City Manager Lynne Oler to express concerns about her son's transfer and possible violations of the nepotism policy. She again contacted Ms. Oler to express concerns about the safety of the Fire Department's operations after seeing a fire

2

truck traveling at a high rate of speed with no lights or sirens on. On November 19, 2013, Ms. Boudreaux filed a complaint with the Florida Ethics Commission alleging violations of the Florida Code of Ethics against Chief McArtor, Assistant Chief Matheny, Ms. Oler, and the City.

Before his mother's ethics complaint was filed, Mr. Boudreaux received a number of disciplinary actions for violating department guidelines and substandard performance in March, May, August, and November of 2013. After the complaint was filed and before his termination, he also received two employee coaching forms with warnings to improve his performance. On December 12, 2013, Chief McArtor wrote to Ms. Oler, attaching the coaching forms and notices of disciplinary action and stating that, due to his "continued sub-standard performance, work ethic and decision making[,]" Mr. Boudreaux could not be relied upon in his position. *See* D.E. 65-3. Chief McArtor wrote that he was turning the matter over to Ms. Oler "for immediate and appropriate action as [she deemed] necessary[.]" *Id.* At least three other firefighters submitted statements or letters to Chief McArtor regarding their complaints about Mr. Boudreaux's performance.

On January 16, 2014, the City terminated Mr. Boudreaux's employment. The notice of dismissal signed by Chief McArtor and Ms. Oler stated that, despite repeated feedback and coaching, Mr. Boudreaux's work performance had not improved and the City had lost confidence in his leadership. Mr. Boudreaux

3

appealed his termination through the City's three-step grievance procedure, but his termination was upheld.

Mr. Boudreaux then filed this suit, asserting claims against Chief McArtor and the City for First Amendment retaliation based on his mother's protected speech and his protected association with his mother. Both Chief McArtor and the City filed motions for summary judgment. After holding a hearing on the motions, the district court granted summary judgment in favor of Chief McArtor and the City.

## II

We review a district court's grant of summary judgment *de novo*, applying the same legal standard used by the district court and drawing all factual inferences in the light most favorable to the nonmoving party. *See Johnson v. Bd. of Regents*, 263 F.3d 1234, 1242–43 (11th Cir. 2001). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the nonmoving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In order to overcome a motion for summary judgment, the nonmoving party must present more than a mere scintilla of evidence supporting his position, and must make a sufficient

4

showing that a jury could reasonably find in his favor. *See Brooks v. Cty. Comm'n of Jefferson Cty., Ala.*, 446 F.3d 1160, 1162 (11th Cir. 2006).

## III

Mr. Boudreaux argues that his mother engaged in protected speech through her complaints, and that he was terminated in retaliation for his mother's First Amendment rights and his right to intimate association with her. He argues that the district court erred in granting Chief McArtor qualified immunity and in determining that the City was not liable because (1) Chief McArtor was not a final policymaker, and (2) Ms. Oler had no illegal or improper motive in terminating him.

## A

To be entitled to relief under § 1983, a plaintiff must show that he was deprived of a right secured by federal law, such as the United States Constitution. *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999). "[N]o matter how discriminatory or wrongful" the challenged conduct may have been, there can be no relief under § 1983 if the claim is not tied to a federally protected interest. *See id.* at 50. Qualified immunity shields government employees from individual liability if their conduct does not violate constitutional or statutory rights of which a reasonable person would have known. *See Behrens v. Pelletier*, 516 U.S. 299, 305–06 (1996).

5

The First Amendment protects not only a citizen's right to speak, but also his right to associate freely with other speakers of similar opinions. *See Roberts v. U.S. Jaycees*, 468 U.S. 609, 618 (1984). To determine which line of cases—freedom of speech or freedom of association—is most instructive, "we look at the manner in which [Mr. Boudreaux's] 'beliefs' became known to the outside world." *Berry v. Bailey*, 726 F.2d 670, 673 n.4 (11th Cir. 1984). Because Mr. Boudreaux is not alleging that he was retaliated against for his beliefs due to his own speech or actions, but rather for his association with his mother, who made her beliefs known, the freedom of association line of cases is most instructive here. *See id. See also Hatcher v. Bd. of Pub. Educ. & Orphanage for Bibb Cty.*, 809 F.2d 1546, 1557 (11th Cir. 1987) (determining that claims were based upon freedom of association where employee alleged that she was denied a position at a school because she associated with parents and others who protested the school board's plan to close certain schools).

"[The] right to freedom of association extends to public employees being able to engage in associative activity without retaliation." *Hatcher*, 809 F.2d at 1558. To establish a retaliation claim, a factfinder must determine whether the associational activity was a substantial or motivating factor in the employer's retaliatory action, and, if so, whether a preponderance of evidence supports the conclusion that the adverse action would not have occurred in the absence of the

6

associational activities. *See id.* "Finally, the factfinder should determine whether the balance between [the employee's] interest in engaging in the associational activity, and the [City's] interest as an employer in promoting efficient operation . . . , supports the challenged action." *Id.* (citing *Pickering v. Bd of Educ.,* 391 U.S. 563, 568 (1968)).

Mr. Boudreaux has not established that his associational activity was a substantial or motivating factor in the City's decision to terminate his employment. Chief McArtor and the City submitted evidence documenting Mr. Boudreaux's substandard work performance for months before his mother filed the ethics complaint; coaching forms with warnings to improve his performance after his mother's complaint was filed; and letters from other firefighters reflecting his poor performance. Chief McArtor's letter notified Ms. Oler of Mr. Boudreaux's continued substandard performance and his unwillingness to improve, and the impact of his behavior on the Fire Department.

In his notice of termination, Mr. Boudreaux was informed that his work performance had not improved, despite repeated feedback and coaching from his supervisor. At no time during the appeal of his termination did Mr. Boudreaux indicate that he thought he was terminated because of his mother's ethics complaint—rather, he alleged he was wrongfully terminated because Chief McArtor was threatened by him and was highly volatile.

7

In contrast, the only evidence submitted by Mr. Boudreaux to support his argument that the ethics complaint was the motivating factor in his termination was (1) his belief, and his mother's belief, that he was terminated because of the complaint, and (2) the proximity of the complaint, filed on November 19, 2013, to his termination, issued on January 17, 2014. These contentions are not sufficient to create a genuine issue of fact as to whether Mr. Boudreaux's termination was retaliatory.

Even if his interest in his association with his mother carried greater weight than the City's interest in the efficient running of its Fire Department, *see Pickering*, 391 U.S. at 568, Mr. Boudreaux has not shown that, but for his mother's ethics complaint, he would not have been terminated. Moreover, even if Chief McArtor was improperly attempting to oust Mr. Boudreaux to make room for other firefighters, "no matter how discriminatory or wrongful" the challenged conduct may have been, there can be no relief under § 1983 if Mr. Boudreaux cannot show he was deprived of a constitutional right. *See Am. Mfrs.*, 526 U.S. at 49–50. We therefore affirm the district court's ruling that Chief McArtor is entitled to qualified immunity, and the grant of summary judgment in his favor.

**B**

Mr. Boudreaux's claim against the City similarly fails. For a government body to be held liable under § 1983, a plaintiff may demonstrate that he has been deprived of his constitutional rights through (1) an express policy; (2) a widespread practice so permanent and well-settled that it constitutes a custom; or (3) an act or decision of an officer with final policy-making authority. *See Cuesta v. Sch. Bd. of Miami-Dade Cty., Fla.*, 285 F.3d 962, 966–68 (11th Cir. 2002).

Mr. Boudreaux argues that the City is liable because Ms. Oler was the final policymaker with regard to employee terminations, given that there was no meaningful review of her decision. He argues in the alternative that Ms. Oler ratified the purported illegal and retaliatory recommendation by Mr. McArtor to terminate his employment. The City maintains that Mr. Boudreaux's theory before the district court was that Mr. McArtor—not Ms. Oler—was in the position of policymaker or had been delegated policymaking authority.

Whether Ms. Oler or Mr. McArtor retained final policymaking authority, however, is of no moment. As established above, the termination decision did not violate any constitutional right because Mr. Boudreaux has not demonstrated that he would not have been terminated but for his mother's ethics complaint. He therefore cannot show that his termination was based on unlawful retaliation.

9

## IV

Because Mr. Boudreaux has failed to establish that he was deprived of a constitutional right, we affirm the district court's grant of summary judgment in favor of Chief McArtor and the City.

**AFFIRMED**.