[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-11168

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APR 6, 2010
JOHN LEY
CLERK

D. C. Docket No. 08-80008-CV-DTKH

RANDOLPH STARLING,

Plaintiff-Appellant,

versus

BOARD OF COUNTY COMMISSIONERS,
PALM BEACH COUNTY,
KEN FISCHER,
in his official and individual capacity,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(April 6, 2010)

Before DUBINA, Chief Judge, KRAVITCH, Circuit Judge, and ALBRITTON,[*]
District Judge.

---

[*] Honorable W. Harold Albritton III, United States District Judge for the Middle District
of Alabama, sitting by designation.

KRAVITCH, Circuit Judge:

The primary question in this appeal is whether Palm Beach County and one of its Fire Department officers violated a firefighter's First Amendment right to intimate association when they demoted him for an extramarital affair with one of his subordinates. We conclude that they did not violate the Constitution because the County's interest in discouraging extramarital association between supervisors and subordinates is so critical to the effective functioning of the Fire Department that it outweighs the firefighter's interest in extramarital association with a subordinate, even if we assume *arguendo* that the First Amendment protects extramarital association as fundamental right.

## I. Facts

Randolph Starling is a former firefighter in the Palm Beach County Fire Rescue Department. In May 2005, when he was a "rescue captain," he arranged to have Carolyn Smith, another firefighter, transferred to his fire station as his subordinate. Sometime during the next few months, Smith and Starling—then married but separated from his wife—began an intimate relationship. Starling's wife filed for divorce in July, and he moved in to Smith's house in October, although his divorce did not become final until April, 2006. Starling and Smith's cohabitation was common knowledge among their friends and coworkers, and they

married in June 2006.

According to Starling, soon after moving in with Smith, he learned that Ken Fisher, his direct supervisor, had been using Smith's home for extramarital trysts with another married firefighter. When Smith told Starling that Fisher had once solicited her (through the other firefighter) for a three-person sexual encounter, Starling asked her to stop letting Fisher use her home. Starling alleges that this angered Fisher, who threatened him with disciplinary action and told him to end his relationship with Smith.

When Starling and Smith continued their association, Fisher allegedly began saying offensive things about their relationship and following Smith on the job, in an attempt to catch her doing something wrong. Starling requested transfers for Smith and himself, but those requests were denied. He also complained to his union representative. Starling claims that when Fisher learned of the union's involvement, he threatened to "see to it" that Starling would lose his "captain's bars." Fisher disputes these allegations in their entirety and alleges that Starling's relationship with Smith was damaging the effectiveness of his battalion.

On January 11, 2006, Fisher issued an Employee Development Form (EDF) stating that Starling's "preoccupation" with Smith was "caus[ing] a disruption for the station officer and for the crew" and urging Starling to "return [his]

3

performance to its past level." The EDF also stated that Starling had delivered a package for Smith when he was supposed to be responding to a call, cancelled a training session to spend time with her, and helped her at night with her reports while he was on duty. Although the EDF was not designed for disciplinary purposes, it warned Starling that his failure to prioritize "mak[ing] station rounds and be[ing] more consistent with [his] daily routine" could "lead to initiation of a special performance review or disciplinary action." Starling responded to the EDF, without denying any specific accusations, by complaining of the "hostile work environment" Fisher had created for him and Smith.

Within ten days, Starling learned that he faced potential disciplinary action for his conduct in three separate incidents during the previous year and a half. Starling claimed that Fisher misrepresented the seriousness of these incidents to punish him for continuing his relationship with Smith. Nevertheless, on February 13, Herman Brice, the County's Fire Rescue Administrator and the only person with the authority to discipline Department employees, demoted Starling from captain to "firefighter/paramedic." Starling accepted union representation and filed a grievance, which Brice denied after a hearing at which Starling had union representation. The union declined to pursue arbitration of the dispute—a decision left to its discretion under the terms of the collective-bargaining agreement—on the

4

basis that Starling's claim lacked merit.

Starling sued Fisher and the County under 42 U.S.C. § 1983 for violating his First Amendment right to intimate association. Fisher denied playing any role in Starling's demotion. Brice denied having any knowledge of Starling's relationship with Smith until after the demotion. With these denials, and arguing that Starling had no First Amendment right to engage in an "adulterous" relationship with Smith, the defendants moved for summary judgment.

Starling opposed the defendants' motion, relying primarily on his mother's affidavit describing a conversation she had with Brice. During that conversation, Brice allegedly said that Fisher had repeatedly complained about Starling's relationship with Smith. Brice also said that he "typically followed his staff on disciplinary matters." Starling also disputed the defendants' assertion that the First Amendment did not protect his right to intimate association with Smith.

The district court granted the defendants' motion for summary judgment after concluding that there was no genuine issue of material fact as to whether Brice—who imposed the discipline—knew of Fisher's allegedly improper motives. In addition, the court ruled that Fisher was entitled to qualified immunity because Starling's First Amendment right to intimate association with Smith was not clearly established. The court did not resolve whether the First Amendment

5

protected Starling's association with Smith.  Starling appeals.

## II. Discussion

We review the district court's summary judgment order *de novo*.  *Shuford v. Fid. Nat'l Prop. & Cas. Ins. Co.*, 508 F.3d 1337, 1341 (11th Cir. 2007).  Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

Starling challenges the district court's summary judgment order on several grounds, but we conclude that, regardless of the merits of these arguments, neither Fisher nor the County can be held liable for violating Starling's alleged constitutional rights.  *See Burton v. Tampa Hous. Auth.*, 271 F.3d 1274, 1277 (11th Cir. 2001) ("A grant of summary judgment may be upheld on any basis supported by the record.").  We reach this conclusion by applying the balancing test developed to assess the constitutionality of burdens on constitutional rights in the public-employment context from *Pickering v. Board of Education*, 391 U.S. 563 (1968).[1]  *See Shahar v. Bowers*, 114 F.3d 1097, 1103 (11th Cir. 1997) (*en banc*)

---

[1] The *Pickering* balancing test was initially developed to assess the constitutionality of burdens on free speech in the public-employment context.  The test in the intimate-association

(applying *Pickering* in the intimate-association context). "*Pickering* balancing, in the public employment context, involves the weighing of the employee's interest in the exercise of a constitutional right against the employer's interest in maintaining an efficient workplace." *Id*. at 1112 (Tjoflat, J., concurring specially).

In this case, we conclude that the County's interest in discouraging intimate association between supervisors and subordinates is so critical to the effective functioning of its Fire Department that it outweighed Starling's interest in his relationship with Smith in the workplace. In reaching this conclusion, we do not address whether the First Amendment protects intimate, extramarital association.[2] Instead, we assume *arguendo* that Starling's right to intimate, extramarital association with Smith is fundamental.[3] *See, e.g., Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988) ("A fundamental and longstanding

---

context is identical, except the intimate association does not have to be of public concern. *See Hatcher v. Bd. of Pub. Educ.*, 809 F.2d 1546, 1558 (11th Cir. 1987). However, the test still requires (1) an adverse employment action in which (2) protected association was a "substantial" or "motivating" factor in the employer's decision. *Id*. In this case, neither party disputes that Starling's demotion was an adverse employment action, and there is evidence in the record suggesting that Starling's relationship with Smith was a motivating factor in his demotion.

[2] Thus, we do not reach the question whether the district court erred by concluding that a right to intimate, extramarital association was not clearly established under the First Amendment.

[3] Intimate association involves "choices to enter into and maintain certain intimate human relationships." *Roberts v. U. S. Jaycees*, 468 U.S. 609, 617-18 (1984). The First Amendment protects these choices to differing degrees against "undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme." *Id*.

7

principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them.").

Our conclusion rests on our assessment of the County's interest in discouraging extramarital affairs between supervisors and subordinates in the Fire Department. "[O]perational efficiency" is a "vital government interest." *United States v. Nat'l Treasury Employees Union*, 513 U.S. 454, 473. We therefore ask whether Starling's affair with his subordinate (1) "impair[ed] discipline by superiors or harmony among co-workers," (2) "ha[d] a detrimental impact on close working relationships for which personal loyalty and confidence [were] necessary," or (3) "impede[d] the performance of the [employee's] duties or interfere[d] with the regular operation of the enterprise," *Rankin v. McPherson*, 483 U.S. 378, 388 (1987). In analyzing these factors, "the manner, time, and place of the employee's expression are relevant, as is the context in which the dispute arose." *Id*. Furthermore, the more Starling's demotion is necessary to the "effective functioning" of the Fire Department, "the more the [demotion] becomes justifiable, and thus the more likely it is that a court will find the [demotion] constitutionally permissible by finding the employer's interest to outweigh the employee's interest in the *Pickering* balance." *McCabe v. Sharrett*, 12 F.3d 1558, 1570 (11th Cir. 1994).

In the "quasi-military" context, which includes both fire departments and police stations, *see Anderson v. Burke County*, 239 F.3d 1216, 1222 (11th Cir. 2001), we have afforded public employers greater latitude to burden an employee's rights, particularly when the exercise of that right impacts discipline, morale, harmony, uniformity, and trust in the ranks. *See Oladeinde v. City of Birmingham*, 230 F.3d 1275, 1293 (11th Cir. 2000). For instance, we held that a police chief could burden his secretary's fundamental right to marry because her marriage to a subordinate in the office could undermine her loyalty, particularly when she might be working on matters that directly affected her husband. *McCabe,* 12 F.3d 1558. Loyalty and confidentiality, we explained, are absolutely critical to the effective functioning of a police department: "[T]he police chief's office cannot function effectively unless the police chief's secretary is loyal to him and able to maintain the confidentiality of the office." *Id.* at 1572. Thus, even though there was no evidence that the secretary's marriage had actually caused a breach of loyalty or confidentiality and the "likelihood of such a breach occurring may not have been overwhelming," her demotion was constitutionally permissible because any such breach "would likely cause serious damage to office functioning." *Id*. at 1573.

In this case, the County has a strong interest in regulating intimate relationships between supervisors and their subordinates in the Fire Department.

9

The Palm Beach County Operational Procedure "strongly discourages" romantic relationships between supervisors and subordinates because there is always a "potential for abuse of power" and "sexual harassment" in those relationships. The County's interest in discouraging such behavior is heightened in the Fire Department, which has a special "need to secure discipline, mutual respect, trust and particular efficiency among the ranks due to its status as a quasi-military entity different from other public employers." *Anderson*, 239 F.3d at 1222. For instance, Starling's battalion worked 24-hour shifts that required him and his subordinates to sleep and work in close proximity. Intimate, extramarital relationships between subordinates and supervisors in this environment can be particularly destructive to the chain of command by weakening trust and discipline and threatening harmonious interpersonal relationships.

The mere potential for this kind of disruption in the Fire Department would likely justify a burden on a fundamental right to intimate association. *See McCabe,* 12 F.3d at 1573. This case, however, does not require such extrapolation: the undisputed record evidence shows that Starling's relationship with Smith was damaging operational efficiency. First, the relationship was impairing internal discipline in Starling's battalion. For instance, the EDF expressly stated that Starling's special attention for Smith—including their late night association—was

10

threatening the "harmony" of the shift. Second, the record also shows that Starling was affording Smith special favoritism, behavior which can undermine personal loyalty and confidence in impartial leadership. Fisher's affidavit and the EDF suggested that Starling had cancelled a training shift to work exclusively with Smith. Third, the record also shows that Starling's relationship with Smith distracted him from his responsibilities and impeded his overall performance at work. In particular, the EDF stated that Starling was failing to coordinate with other Fire Rescue personnel to develop a better procedure for emergency medical service reports because of his preoccupation with Smith.

Starling argues that the County could have promoted efficiency without burdening his right by granting his requests to transfer Smith out of his battalion. Starling's relationship with Smith, however, had already damaged his battalion's effectiveness, and there is no guarantee that her transfer would have ended these disruptions. Thus, this argument does not alter our conclusion that the County's interests in an efficient Fire Department outweighed Starling's interest in intimately associating with Smith. *See Rankin*, 483 U.S. at 309 ("[T]he very nature . . . [of] the state interest element of the test focused on the effective functioning of the public employer's enterprise.").

The district court's order of summary judgment is therefore

**AFFIRMED.**

11