[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-15583
_____

D.C. Docket No. 5:14-cv-00750-AKK

LYNDA GAINES,

Plaintiff-Appellee,

versus

E. CASEY WARDYNSKI,
individually and in his capacity as
Superintendent of the Huntsville City Schools,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(September 21, 2017)

Before JORDAN and JULIE CARNES, Circuit Judges, and VINSON,* District
Judge.

_____

* Honorable C. Roger Vinson, Senior United States District Judge for the Northern
District of Florida, sitting by designation.

VINSON, District Judge:

This appeal centers on the level of particularity that is required for qualified immunity analysis in a First Amendment civil rights case. Lynda Gaines, a public school teacher, filed this Section 1983 action against the school superintendent, E. Casey Wardynski, Ph.D., alleging that she was denied a promotion in violation of her First Amendment right to free speech and intimate association.[1] Dr. Wardynski moved for summary judgment, arguing, *inter alia*, that he was entitled to qualified immunity. The district court disagreed and denied the motion. Dr. Wardynski then filed this interlocutory appeal, and we granted oral argument.

"Under the qualified immunity doctrine, government officials performing discretionary functions are immune not just from liability, but from suit, unless the conduct which is the basis for suit violates clearly established federal statutory or constitutional rights of which a reasonable person would have known." *Sanders v. Howze*, 177 F.3d 1245, 1249 (11th Cir. 1999) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity protects all but the plainly incompetent or those who knowingly violate federal law; it does not extend to one who knew or reasonably should have known that his or her actions would violate the plaintiff's

---

[1] Gaines originally sued several others as well, but we are only concerned here with the claims against Dr. Wardynski.

2

federal rights. *Jones v. Fransen*, 857 F.3d 843, 851 (11th Cir. 2017) (citations and quotation marks omitted).

Earlier this year, the Supreme Court observed:

> In the last five years, this Court has issued a number of opinions reversing federal courts in qualified immunity cases. The Court has found this necessary both because qualified immunity is important to society as a whole, and because as an immunity from suit, qualified immunity is effectively lost if a case is erroneously permitted to go to trial.
>
> Today, it is again necessary to reiterate the longstanding principle that "clearly established law" should not be defined at a high level of generality. As this Court explained decades ago, the clearly established law must be "particularized" to the facts of the case. Otherwise, plaintiffs would be able to convert the rule of qualified immunity into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.

*White v. Pauly*, --- U.S. ---, 137 S. Ct. 548, 551-52 (2017) (multiple citations, some quotation marks, and alterations omitted).

Because the district court here defined "clearly established law" at too high a level of generality, we reverse.

## I.

At the time relevant to this case, Gaines was a teacher in the Huntsville City School System, and her father, Robert Harrison, was a local county commissioner. On May 1, 2013, the *Huntsville Times* published an article in which Harrison made

3

critical comments about the Huntsville City Board of Education (the Board) and its Superintendent, Dr. Wardynski, regarding district rezoning efforts and plans to end federal monitoring under a long-standing desegregation order.[2] The complaint does not allege that Gaines shared any of her father's criticisms or that Dr. Wardynski thought she did. Nevertheless, very shortly after the article was published, Gaines alleges---and for purposes of our analysis we accept as true---that she was denied a promotion to one of three potential teaching positions.[3] She subsequently brought this lawsuit against Dr. Wardynski, alleging that he violated her First Amendment rights by (i) retaliating against her in violation of her right to freedom of speech (based on what her father told the newspaper), and (ii) retaliating against her in violation of her right to freedom of intimate association (based on her close relationship with her father).

---

[2] Harrison was apparently a longtime critic of Dr. Wardynski and the Board. The article was titled "Bob Harrison Blasts Huntsville Superintendent Over Moving Magnet Schools," and in it he withdrew all support for the rezoning plans; repeatedly called Huntsville school officials "disingenuous;" and said that the Huntsville City School System "did not deserve to end" federal monitoring under the desegregation order (one of fewer than 200 systems in the nation still under such an order) because "the system has not removed the vestiges of the old dual system based on race."

[3] The attorneys devoted a lot of space in their briefs (and a lot of time at oral argument) to whether Gaines had properly applied for the positions; whether they were even available to her; and/or whether Dr. Wardynski was the one responsible for her being passed over. For purposes of our qualified immunity analysis, we will assume that she did; that they were; and that he was.

4

Prior to trial, Dr. Wardynski filed a motion for summary judgment in which he argued, in part, that he was entitled to qualified immunity as it was not "clearly established" that it violated the First Amendment to take an adverse action against a public employee because a family member had engaged in protected speech. The district court denied the motion by written order and set the case for a jury trial. Dr. Wardynski filed this interlocutory appeal and moved the district court to stay the trial pending the outcome of this appeal. The district court summarily denied the motion to stay, saying only that the appeal was frivolous. Dr. Wardynski then filed an emergency motion in this court to stay the approaching trial date, and a previous panel granted the motion.

## II.

## A.

To be entitled to qualified immunity, the defendant must first establish that he was acting within the scope of his discretionary authority. *Maddox v. Stephens*, 727 F.3d 1109, 1120 (11th Cir. 2013). Once that is shown (and it is unchallenged here), the burden shifts to the plaintiff to establish that qualified immunity is not appropriate. *Id.* To do that, the plaintiff must demonstrate (taking all the facts in the light most favorable to her) the following two things: (1) that the defendant violated her constitutional rights, and (2) that, at the time of the violation, those

5

rights were "clearly established . . . in light of the specific context of the case, not as a broad general proposition[.]" *See Saucier v. Katz*, 533 U.S. 194, 201 (2001), overruled, in part, on other grounds by *Pearson v. Callahan*, 555 U.S. 223 (2009). "We may decide these issues in either order, but, to survive a qualified-immunity defense, [the plaintiff] must satisfy both showings." *Jones*, 857 F.3d at 851.

For purposes of this appeal, we will accept as true that Dr. Wardynski passed Gaines over for promotion because her father had criticized him and the Board about a matter of public concern and that doing so violated her First Amendment rights (the first prong). *See, e.g., Adler v. Pataki*, 185 F.3d 35, 41-45 (2d Cir. 1999) (holding that retaliatory action taken solely because of the protected speech of a close family member is actionable under the First Amendment). This case turns on whether those rights were "clearly established" by controlling law when Dr. Wardynski did what he did (the second prong).

### B.

"When we consider whether the law clearly established the relevant conduct as a constitutional violation at the time that [the government official] engaged in the challenged acts, we look for 'fair warning' to officers that the conduct at issue violated a constitutional right." *Jones*, 857 F.3d at 851 (citing *Coffin v. Brandau*,

6

642 F.3d 999, 1013 (11th Cir. 2011) (en banc)). There are three methods to show

that the government official had fair warning:

> *First*, the plaintiffs may show that a materially similar
> case has already been decided. *Second*, the plaintiffs can
> point to a broader, clearly established principle that
> should control the novel facts of the situation. *Finally*,
> the conduct involved in the case may so obviously violate
> the constitution that prior case law is unnecessary. Under
> controlling law, the plaintiffs must carry their burden by
> looking to the law as interpreted at the time by the United
> States Supreme Court, the Eleventh Circuit, or the
> [relevant State Supreme Court].

*Terrell v. Smith*, 668 F.3d 1244, 1255-56 (11th Cir. 2012) (citations, quotation

marks, and alterations omitted); *id.* at 1256-58 (discussing the three methods in

detail); *Vinyard v. Wilson*, 311 F.3d 1340, 1350-53 (11th Cir. 2002) (same).

The second and third methods are generally known as "obvious clarity"

cases. *See Vinyard*, 311 F.3d at 1350-51. They exist where the words of the federal

statute or constitutional provision at issue are "so clear and the conduct so bad that

case law is not needed to establish that the conduct cannot be lawful," or where the

case law that does exist is so clear and broad (and "not tied to particularized facts")

that "every objectively reasonable government official facing the circumstances

would know that the official's conduct did violate federal law when the official

7

acted." *See id.*[4] Cases do not often arise under the second and third methods. *See, e.g., Santamorena v. Georgia Military College*, 147 F.3d 1337, 1340 n.6 (11th Cir. 1998) ("these exceptional cases rarely arise"); *see also Coffin*, 642 F.3d at 1015 ("Our case law has made clear that 'obvious clarity' cases will be rare.") (citing multiple cases, including *Lee v. Ferraro*, 284 F.3d 1188, 1199 (11th Cir. 2002) (referring to obvious clarity cases as a "narrow exception"); *Rodriguez v. Farrell*, 280 F.3d 1341, 1350 n.18 (11th Cir. 2002) ("We very occasionally encounter the exceptional case in which a defendant officer's acts are so egregious that preexisting, fact-specific precedent was not necessary to give clear warning to every reasonable . . . officer that what the defendant officer was doing must be [unlawful].")).

Because failing to promote an employee after her father had criticized her employer is not so egregious as to violate the First Amendment on its face with respect to her constitutional rights, and because there are no "broad principles" in

---

[4] An example of the former is found in *United States v. Lanier*, 520 U.S. 259 (1997), where the Supreme Court observed: "'There has never been . . . a section 1983 case accusing welfare officials of selling foster children into slavery; it does not follow that if such a case arose, the officials would be immune from damages[.]'" *Id.* at 271 (citation omitted). As for an example of the latter, this court has held that the general principle against warrantless searches and seizures established in a variety of cases was enough to clearly establish that a warrantless entry into a doctor's office to look for a probationer was unconstitutional. *See O'Rourke v. Hayes*, 378 F.3d 1201, 1208 (11th Cir. 2004) ("Hayes did not have a search warrant, and can point to no exigency justifying his search. Consequently, even if a factually similar case did not exist, his actions would still have violated rights that are clearly established under these general statements of principle.").

8

case law clearly establishing that every reasonable official in that situation would know that the challenged conduct would violate her First Amendment rights, this is not one of the rare and exceptional "obvious clarity" cases.[5] Thus, we will focus our attention on the remaining (first) method to establish fair warning.

As noted, to establish fair warning under this method, plaintiff may point to prior case law (from the Supreme Court of the United States, the Eleventh Circuit, or the highest court in the relevant state) that is "materially similar." *Jones*, 857 F.3d at 851-52. "This method requires us to consider 'whether the factual scenario that the official faced is fairly distinguishable from the circumstances facing a government official in a previous case.'" *Id.* (quoting *Loftus v. Clark–Moore*, 690 F.3d 1200, 1204 (11th Cir. 2012)). Although existing case law does not necessarily have to be "directly on point," it must be close enough to have put "the statutory or constitutional question beyond debate." *See Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011); *see also Hope v. Pelzer*, 536 U.S. 730, 739 (2002) ("This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent.") (internal citation omitted). If

---

[5] Indeed, in *Adler*, *supra*, where the Second Circuit concluded that it violates the First Amendment to retaliate against an employee for the protected speech of a close family member, the Court of Appeals specifically acknowledged "the matter is not free from doubt[.]" 185 F.3d at 44. A matter that is "not free from doubt" cannot also be "obvious."

9

reasonable people can differ on the lawfulness of a government official's actions despite existing case law, he did not have fair warning and is entitled to qualified immunity. *Storck v. City of Coral Springs*, 354 F.3d 1307, 1314 (11th Cir. 2003). This court has stated many times that "'if case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant.'" *Oliver v. Fiorino*, 586 F.3d 898, 907 (11th Cir. 2009) (citation omitted).

It is particularly difficult to overcome the qualified immunity defense in the First Amendment context. *See, e.g., Maggio v. Sipple*, 211 F.3d 1346, 1354 (11th Cir. 2000) ("'a defendant in a First Amendment suit will only rarely be on notice that his actions are unlawful'") (citation omitted); *Martin v. Baugh*, 141 F.3d 1417, 1420 (11th Cir. 1998) ("'[O]nly in exceptional cases will government actors have no shield against claims made against them in their individual capacities.' Martin's case is especially difficult to maintain because he bases his claim against Baugh on the First Amendment.") (citations omitted); *Hansen v. Soldenwagner*, 19 F.3d 573, 576 (11th Cir. 1994) (observing that decisions in the First Amendment context "tilt strongly in favor of immunity" and only in the rarest of cases will it be found that a reasonable official should have known that he violated "clearly established" law); *Dartland v. Metropolitan Dade Cty.*, 866 F.2d 1321, 1323 (11th Cir. 1989) (noting

10

that only "the extraordinary case" will survive qualified immunity in the First Amendment context).

### III.

With the foregoing in mind, we will first consider Gaines's freedom of speech claim, followed by her freedom of intimate association claim.

### A.

The district court said it was clearly established that adverse action cannot be taken against a public employee because "a relative of the employee made the protected speech[.]" For this, the district court cited a single case: *Bryson v. City of Waycross,* 888 F.2d 1562 (11th Cir. 1989). But *Bryson* did not involve speech by a relative of the employee; it involved the employee's *own* speech.[6] Gaines impliedly concedes that *Bryson* does not support the position for which it was cited by the district court as she does not even mention the case in her briefs on appeal.

---

[6] The plaintiff in *Bryson* was a police captain who was transferred to a less desirable position after he filed complaints about the police chief. The panel in that case said (at the page cite referenced in the district court's opinion) that "the law is well-established that the state may not [take an adverse action against] a public employee in retaliation for speech protected under the first amendment[.]" 888 F.2d at 1565. However, that general (and unquestionably correct) statement of the law says nothing about whether free speech rights can be asserted by someone who did not personally engage in the protected speech herself.

11

Instead, she relies principally on two other cases to demonstrate that the law in this area is clearly established.[7]

First, and primarily, Gaines relies on *Thompson v. North Am. Stainless*, 562 U.S. 170 (2011), where the Supreme Court held that an employee could pursue a retaliation claim against his former employer after he was fired because his fiancé (who was an employee of the same company) had engaged in a protected activity. However, *Thompson* was a Title VII case arising under the statute's anti-retaliation provision, and the protected activity was filing a charge of discrimination under that statute. The case does not constitute clearly established First Amendment law because Title VII protections are not always the same as those provided by the Constitution. *Cf., e.g., Washington v. Davis*, 426 U.S. 229, 239 (1976) ("We have never held that the constitutional standard for adjudicating claims of invidious racial discrimination is identical to the standards applicable under Title VII, and we decline to do so today."); *Johnson v. Transportation Agency, Santa Clara Cty., California*, 480 U.S. 616, 632 (1987) ("[W]e do not regard as identical the constraints of Title VII and the Federal Constitution on voluntarily adopted

---

[7] On the morning of oral argument in this case, counsel for Gaines submitted eight additional cases (some of which related to the free speech claim, while the others concerned the freedom of intimate association claim). We reviewed each of those cases and the supplemental briefs that counsel were permitted to file after oral argument. Except where otherwise indicated, those cases do not warrant discussion.

12

affirmative action plans."); *Snider v. Jefferson State Community College*, 344 F.3d 1325, 1328 (11th Cir. 2003) ("Although [prior Supreme Court and circuit precedent] had concluded that a same-sex sexual harassment claim was actionable under Title VII against a private employer, this precedent could not fairly put Defendants on notice that their alleged conduct clearly violated a federal *constitutional* right.") (emphasis in the original).  Although some of the logic and discussion in *Thompson* could arguably be relevant in the First Amendment context---and counsel for Gaines ably makes that argument---the fact remains it is *not* a First Amendment case, and, thus, it did not "clearly establish" that what Dr. Wardynski did ran afoul of the constitution. To be sure, it should go without saying that a case based on a statutory provision and which did not even address the particular constitutional right at issue cannot put that "constitutional question beyond debate." *See al–Kidd*, 563 U.S. at 741.[8]

---

[8] In her stack of supplemental authority, Gaines cited *Metz v. Sasser*, 664 F. App'x 895 (11th Cir. 2016), a First Amendment retaliation case involving speech by a parent. The panel in that case cited *Thompson* in passing and said without any further discussion that an "employee can rely on evidence that [an adverse job action] was the 'intended means' of retaliating for [the parent's] protected conduct." *Id.* at 896. However, even if a single (and unelaborated) statement in an unpublished opinion could "clearly establish" the law in this circuit for qualified immunity purposes, *Metz* was decided November 30, 2016; the events at issue in this case took place three years prior, in 2013. At that point in time, no United States Supreme Court, Eleventh Circuit, or Alabama Supreme Court case had held on materially similar facts that *Thompson* would apply outside Title VII and in the First Amendment context.

13

Gaines also cites a district court opinion that relied, in part, on *Thompson* in holding that it violates the First Amendment to retaliate against a public employee because of speech by a close family member (there, as here, the plaintiff's father). *Lewis v. Eufaula City Bd. of Ed.*, 922 F. Supp. 2d 1291 (M.D. Ala. 2012). But, of course, a district court case cannot clearly establish the law for qualified immunity purposes either. *See, e.g., Gonzalez v. Lee Cty. Housing Authority,* 161 F.3d 1290, 1302 n.38 (11th Cir. 1998) (noting "our precedent firmly states that a district court opinion cannot" clearly establish law for qualified immunity).[9]

In sum, at the time relevant to this case, it was not clearly established that it would violate an employee's free speech rights to take adverse action because her father had engaged in protected speech. It might be fair to say in that situation that the employer knew or should have known that he was violating the *father's* First Amendment rights.[10] However, it was not clearly established under the controlling

---

[9] *Lewis* is similar to this case in that it involved a teacher who suffered an adverse action after her father publicly criticized the school system. Although, as noted, a district court opinion cannot "clearly establish" the law even if it were directly on point, it bears noting that plaintiff in that case was "allegedly perceived to share the sentiments expressed by her father." 922 F. Supp. 2d at 1303. There are no such allegations here.

[10] And the father may have had a cause of action pursuant to *Bennett v. Hendrix*, 423 F.3d 1247 (11th Cir. 2005), which expressly holds that a private citizen can sue a governmental entity for violating the First Amendment if the retaliatory conduct at issue---here, punishing his child---would likely deter "a person of ordinary firmness" from exercising his First Amendment rights. *Id.* at 1250-54; *see also id.* at 1254 (noting "'[t]he effect on freedom of speech may be small, but since there is no justification for harassing people for exercising their constitutional rights it need not be great in order to be actionable'") (citation omitted).

14

law that it "would violate the constitutional rights *of the [employee]*." *See Jones*, 857 F.3d at 851 (emphasis added). Thus, Dr. Wardynski was entitled to qualified immunity (and summary judgment) on the freedom of speech claim.

### B.

We now turn to the freedom of intimate association claim. At oral argument, Gaines's counsel expressed his opinion that this cause of action was the stronger of the two claims.[11] While it may present a slightly closer question, our analysis and conclusion are the same.

The First Amendment protects two different forms of association: expressive association and intimate association. *See McCabe v. Sharrett*, 12 F.3d 1558, 1562-63 (11th Cir. 1994). "The right of expressive association---the freedom to associate for the purpose of engaging in activities protected by the First Amendment, such as speech, assembly, petition for the redress of grievances, and the exercise of religion---is protected by the First Amendment as a necessary corollary of the

[11] Among the several cases that Gaines provided to us the morning of oral argument was *Boudreaux v. McArtor*, 681 F. App'x 800 (11th Cir. 2017), a case that involved alleged retaliation against an adult child for the protected speech of a parent. That unpublished case was decided in March 2017, so it is not relevant to determining whether the law was clearly established at the time that Dr. Wardynski acted in this case. However, it is relevant to the extent it suggests that cases like this should be analyzed under freedom of association and not freedom of speech. *Id.* at 803 ("Because Mr. Boudreaux is not alleging that he was retaliated against for his beliefs due to his own speech or actions, but rather for his association with his mother, who made her beliefs known, the freedom of association line of cases [and not the freedom of speech line of cases] is most instructive here.").

15

rights that the amendment protects by its terms." *Id.* at 1563 (citing *Roberts v. United States Jaycees*, 468 U.S. 609, 617-18, 622 (1984)). The right of intimate association, which is the one at issue here, is "the freedom to choose to enter into and maintain certain intimate human relationships," and it is protected from undue government intrusion "as a fundamental aspect of personal liberty." *See id.* (citing *Roberts*).

To show that a public employer has impermissibly burdened or infringed a constitutional right, the employee must first demonstrate that the asserted right is protected by the Constitution---which, as just indicated, the right to freedom of intimate association is---and that he or she suffered adverse action for exercising the right. *Id.* at 1562. "Upon making these two showings, the employee is entitled to prevail if the adverse employment action was taken in such a way as to infringe the constitutionally protected right [of intimate association]." *Id.*

Gaines has quoted and relied on the foregoing in her brief. However, they are general and abstract statements of the law, and "[g]eneral propositions have little to do with the concept of qualified immunity." *Muhammad v. Wainwright*, 839 F.2d 1422, 1424 (11th Cir. 1987). As we have said: "The line between the lawful and the unlawful is often vague. *Harlow's* 'clearly established' standard demands that a bright line be crossed. The line is not to be found in abstractions---

16

to act reasonably, to act with probable cause, and so forth---but in studying how these abstractions have been applied in concrete circumstances." *Barts v. Joyner*, 865 F.2d 1187, 1194 (11th Cir. 1989); *see also, e.g., Anderson v. Creighton*, 483 U.S. 635, 640-41 (1987) (even though it was clearly established that plaintiff had "a general right . . .  to be free from warrantless searches of [his] home unless the searching officers have probable cause and there are exigent circumstances[,]" the court of appeals should have "consider[ed] the argument that it was *not* clearly established that the circumstances with which [the defendant] was confronted did not constitute probable cause and exigent circumstances"); *Chesser v. Sparks*, 248 F.3d 1117, 1122 (11th Cir. 2001) ("A constitutional right is clearly established if controlling precedent has recognized the right in a 'concrete and factually defined context.' A plaintiff cannot avoid the qualified immunity defense 'by referring to general rules and to the violation of abstract 'rights.'") (citations omitted). Thus, as previously noted, "'if case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Oliver*, 586 F.3d at 907 (citation omitted).

The question in this case is not whether there is a First Amendment right to intimate association; there is. Nor is the question whether a public employee can be subjected to an adverse employment action for exercising that right; she can't. Nor

17

is the question whether the employee will prevail if the adverse action infringed on her right to intimate association; she will. The question we are called to decide is more narrow: was it clearly established in 2013 (by the U.S. Supreme Court, this court, or the Supreme Court of Alabama) that it would violate the right to freedom of intimate association to take an adverse action against an employee whose father publicly criticized her employer?

None of the circuit cases that Gaines has cited involved the same or similar facts. For example, in *McCabe,* which we quoted earlier, a police chief's secretary sued the city and the police chief, claiming that they violated her right to intimate association by transferring her to a less desirable position because of her marriage to a police officer. In *Shahar v. Bowers*, 114 F.3d 1097 (11th Cir. 1997) (en banc), a lawyer sued the Attorney General of Georgia arguing, *inter alia*, that he violated her right to intimate association when he withdrew a job offer after he learned of her lesbian marriage. And in *Starling v. Board of Cty. Comm'rs*, 602 F.3d 1257 (11th Cir. 2010), a former firefighter sued the county and a fire department officer, alleging that his demotion for having an extramarital affair with another firefighter violated his intimate association rights.[12]

---

[12] The case that the district court relied upon, *Hatcher v. Board of Public Ed.*, 809 F.2d 1546 (11th Cir. 1987), involved a public school teacher who was denied a promotion after she was present alongside (and associated with) a group of parents who were protesting the school system. Thus, it was an expressive association case---not an intimate association case---and the

18

The two cases that Gaines's attorney has said "best" support her freedom of intimate association claim are also inapposite. In *Wilson v. Taylor*, 733 F.2d 1539 (11th Cir. 1984), the plaintiff, a police officer, was fired because he was dating the daughter of a convicted felon and reputed key figure in organized crime. This court held that his "freedom of [intimate] association rights were violated" [*id.* at 1550], but the panel specifically noted it was "a narrow holding." *Id.* at 1544 n.3; *accord, e.g., Chesser*, 248 F.3d at 1125 n.10 ("we expressly recognized in *Wilson* that it was 'a narrow holding'"). And in *Lawson v. Curry*, 244 F. App'x 986 (11th Cir. 2007), the plaintiff survived a motion to dismiss on qualified immunity grounds where she alleged that her intimate association rights had been violated when she was harassed, disciplined, and fired for being in interracial relationships and for being pregnant with an interracial child. That case is not remotely analogous to what we have here.

Ultimately, counsel for Gaines had to concede at oral argument that "there certainly are no cases that we've cited dealing with the protection of a child from

---

panel intimated that plaintiff did more than just associate with people who protested; she was essentially a protester herself. *See id.* at 1557-58 (commenting that plaintiff "chose to add the support of her silent presence to the [protest] efforts of those who took a more active role"). There is no allegation in this case, by contrast, that Gaines played any role or in any way supported (even "silently") her father's criticisms about Dr. Wardynski and the Board. Thus, it would not appear that she exercised *her* rights to free speech and/or assembly, or associated with her father "*for the purpose of engaging in [such] activities.*" *McCabe*, 12 F.3d at 1563 (emphasis added).

19

retaliation based upon the conduct of a parent." In the absence of any controlling case involving that situation on sufficiently similar facts, Dr. Wardynski did not have notice and "fair warning" that he was violating Gaines's right to freedom of intimate association. Accordingly, Dr. Wardynski was entitled to qualified immunity, and summary judgment should have been granted on that claim as well.

## IV.

Because the case law that Gaines has relied upon was not particularized to the facts of the case, but rather it merely set out First Amendment principles at a high level of generality, it was not "apparent" that passing her over for promotion based on things her father said would violate *her* constitutional rights. Thus, Dr. Wardynski is entitled to qualified immunity on both the freedom of speech claim and the freedom of intimate association claim.

For these reasons, we reverse the district court's order denying summary judgment, and we remand this case with instructions to grant Dr. Wardynski summary judgment based on qualified immunity as to the Section 1983 claims against him.

**REVERSED.**

JORDAN, Circuit Judge, concurring.

In my view, the constitutional right to freedom of intimate association, whether seen as a pure or hybrid First Amendment right, *see Roberts v. United States Jaycees*, 468 U.S. 609, 618-20 (1984), protects a public employee from adverse treatment based on the speech of a close relative or family member.  *See Adler v. Pataki*, 185 F.3d 35, 41-45 (2nd Cir. 1999); *Adkins v. Bd. of Education*, 982 F.2d 952, 955-56 (6th Cir. 1993); *Lewis v. Eufaula City Bd. of Education*, 922 F.Supp.2d 1291, 1302-03 (M.D. Ala. 2012).  *See also* Collin O'Connor Udell, *Intimate Association: Resurrecting a Hybrid Right*, 7 Tex. J. Women & Law 231, 284-85 (1998).  Nevertheless, I concur in the court's opinion and qualified immunity analysis because no cases from the Supreme Court, the Eleventh Circuit, or the Alabama Supreme Court have so far come to that conclusion.