[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————————

No. 21-14433

Non-Argument Calendar

————————————————

JONATHAN A. SASSER,

Plaintiff-Appellant,

*versus*

BOARD OF REGENTS OF THE UNIVERSITY
SYSTEM OF GEORGIA,
UNIVERSITY OF GEORGIA,
JERE WADE MOREHEAD,
Individually and as President, University of Georgia,
UNIVERSITY OF GEORGIA EQUAL OPPORTUNITY OFFICE,
ERYN JANYCE DAWKINS,
Individually and as Director Equal Opportunity Office,
University of Georgia, et al.,

Defendants-Appellees.

————————————

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:20-cv-04022-SDG

————————————

Before NEWSOM, BRANCH, and GRANT, Circuit Judges

PER CURIAM:

Plaintiff Jonathan Sasser ("Sasser") appeals *pro se* the district court's dismissal of his second amended complaint alleging violations of his First Amendment right to freedom of speech while attending the University of Georgia ("UGA") as a student and athlete on the UGA baseball team. Because the district court's dismissal was proper, we affirm.

## I.    Factual Background

On or about September 29, 2018, Sasser attended a home UGA football game and, while in attendance, used a racial slur in reference to one of the players. Over a period of days following the football game, Sasser met with his baseball coach and various officials from the UGA Athletic Association ("UGAAA") to discuss the incident. On or about October 3, 2018, these individuals informed Sasser he would be removed from the baseball team.

During this same period, the director of UGA's Equal Opportunity Office ("EOO"), Defendant Eryn Janyce Dawkins, conducted an investigation that concluded with Sasser's suspension for the remainder of the fall 2018 semester. Sasser appealed his suspension and removal from the baseball team but Defendant Jere Wade Morehead, UGA's President, upheld the decisions. After a second appeal, the Board of Regents of the University System of Georgia ("the Board of Regents") also upheld the decisions.

Sasser filed suit against UGA, the Board of Regents, the EOO, and the UGAAA under the pseudonym "John Doe" asserting seven causes of action alleging free speech, due process, and equal protection violations, as well as breach of contract, and seeking declaratory and injunctive relief. He also named the following four school officials in both their official and personal capacities for violating his First Amendment rights: Morehead, Dawkins, Edward McMillian Tate (UGA's Vice Chancellor of Legal Affairs), and C. Dean Alford, P.E. (a UGA Regent).

Sasser amended his complaint to seek additional forms of relief, including reversal of his removal from the UGA baseball team and expungement of his record. The district court ordered him to file a second amended complaint identifying himself by name. In his second amended complaint, Sasser finally identified himself alleging that the disciplinary actions violated his constitutional rights under 42 U.S.C. § 1983 and were taken in retaliation for his exercise of his First Amendment freedoms.

Sasser also brought Fourteenth Amendment equal protection and due process claims, and a breach of contract claim. Additionally, he sought declaratory and injunctive relief.

Following motions to dismiss filed by each Defendant, the district court dismissed Sasser's second amended complaint.

The district court dismissed all claims against UGA and the EOO because, as member institutions of the Board, neither are legal entities that can be sued. The district court also dismissed all claims against the Board of Regents, concluding that it was entitled to Eleventh Amendment sovereign immunity. As for the UGAAA, the district court accepted Sasser's argument that the UGAAA was an "arm of the state" and dismissed the claims against it as being barred by Eleventh Amendment sovereign immunity. Finally, the district court dismissed the claims against the individual Defendants in their official capacity on sovereign immunity grounds, concluding that, because Sasser based those claims solely on past conduct, *Ex Parte Young*, 209 U.S. 123 (1908), did not apply.

As for the remaining claims against the individual Defendants in their personal capacities, the district court concluded that the Defendants were entitled to qualified immunity, finding that Sasser had not alleged a constitutional violation, "let alone one [that was] clearly established." The district court dismissed Sasser's equal protection, due process, and breach of contract claims—each for failure to state a claim. Because none of Sasser's claims remained, the district court dismissed his claims for declaratory and injunctive relief.

21-14433                 Opinion of the Court                      5

On appeal, proceeding *pro se*, Sasser challenges the dismissal of his claims against the individual Defendants acting in their personal capacities on the grounds of qualified immunity.[1]  Because

---

[1] Sasser has abandoned all other claims on appeal.  An appellant can abandon a claim by: (1) making only passing reference to it, (2) raising it in a perfunctory manner without supporting arguments and authority, (3) referring to it only in the "statement of the case" or "summary of the argument," or (4) referring to the issue as mere background to the appellant's main arguments.  *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681–82 (11th Cir. 2014).  While we will liberally construe *pro se* pleadings, issues not briefed on appeal are normally deemed abandoned and will not be considered.  *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008).

Sasser does not challenge the district court's determination that his First Amendment claims against the Board of Regents or the individual Defendants acting in their official capacity are barred by sovereign immunity.  The same is true for his claims for declaratory and injunctive relief based on the alleged First Amendment violations.  While Sasser's briefing refers broadly to "immunity/qualified immunity" for the individual Defendants, it focuses on arguments related to qualified immunity only.  He has therefore abandoned his claims based upon sovereign immunity.  Even if he had not abandoned these claims, however, they would fail on the merits because the Board of Regents, as an arm or instrumentality of the State of Georgia is entitled to sovereign immunity.  *See, e.g.*, *Stroud v. McIntosh*, 722 F.3d 1294, 1297 (11th Cir. 2013) ("There is no dispute that the Board [of Regents of the University System of Georgia] is an arm of the state for the purposes of asserting sovereign immunity.").  Similarly, the individual Defendants, as alleged agents of the Board of Regents, are also entitled to sovereign immunity.  *See Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991).

As for his claims against the individual Defendants in their official capacities for injunctive and declaratory relief, Sasser does not challenge the district court's determination that *Ex parte Young*, 209 U.S. 123 (1908), did not

the district court did not err in dismissing Sasser's second amended complaint, we affirm.

## II.    Discussion

We review *de novo* a district court's order granting the Defendants' motion to dismiss. *McDonald v. S. Farm Bureau Life Ins. Co.*, 291 F.3d 718, 722 (11th Cir. 2002).

---

apply and the individual Defendants were entitled to sovereign immunity on those claims as well.

Likewise, Sasser does not mention his equal protection or breach of contract claims on appeal. *Id.* Additionally, Sasser raised his due process claims for the first time in his reply brief. While this Court construes briefs filed by *pro se* litigants liberally, we will not address issues raised for the first time in an appellant's reply brief. *United States v. Levy*, 379 F.3d 1241, 1244 (11th Cir. 2004).

Sasser also has not challenged on appeal the district court's dismissal of his claims against UGA or the EOO on the grounds that neither are legal entities capable of being sued in their own capacities. *See Timson*, 518 F.3d at 874. Even if he had not abandoned those claims, they would fail on the merits because neither UGA nor the EOO are distinct, legal entities capable of being sued under Georgia law. *Bd. of Regents of the Univ. Sys. of Ga. v. Doe*, 278 Ga. App. 878, 878 (2006) (holding that member institutions of the Board are not "separate or distinct" legal entities and thus "cannot sue or be sued").

Lastly, Sasser does not challenge the district court's dismissal of his claims against the UGAAA. *See Timson*, 518 F.3d at 874. Even if he had not, his challenge would fail on the merits because the UGAAA is a private corporation, not a state actor, and therefore cannot be liable under § 1983. O.C.G.A. §§ 20-3-78, 20-3-79(a).

### A. Qualified Immunity for the individual Defendants acting in their personal capacities

Because Sasser has abandoned all his other claims, the remaining issue on appeal is Sasser's § 1983 claim against the individual Defendants for monetary damages based upon alleged First Amendment violations. Even assuming that Sasser can show that his First Amendment right to free speech was violated, he has not shown that the allegedly violated right was clearly established. The individual Defendants are therefore entitled to qualified immunity for the claim against them in their personal capacities.

A complaint stating a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Factual allegations in a complaint "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). A plaintiff's allegations must amount to more than "labels and conclusions." *Id.*

Section 1983 prohibits officials acting under color of state law from depriving another of their constitutional rights. 42 U.S.C. § 1983. Qualified immunity protects a defendant from liability under § 1983 for discretionary acts, "as long as [those] acts do not violate clearly established . . . constitutional rights of which a reasonable person would have known." *Jackson v. Sauls*, 206 F.3d 1156, 1164 (11th Cir. 2000). "The immunity protects all but the plainly incompetent or those who knowingly violate the law."

*Jordan v. Mosley*, 487 F.3d 1350,  1354 (11th Cir. 2007) (quotation omitted).

Overcoming the official's qualified immunity defense ordinarily involves a two-part inquiry. *Id.* at 1137. We consider: (1) "[whether] the facts, construed in the light most favorable to the plaintiff, show that a constitutional right has been violated; and (2) whether the right violated was clearly established." *Roberts v. Spielman*, 643 F.3d 899, 904 (11th Cir. 2011) (quotation omitted). Both elements must be satisfied to overcome qualified immunity. *Id*. A court may address these factors in either order it deems most appropriate, *see Case v. Eslinger*, 555 F.3d 1317, 1325–26 (11th Cir. 2009), and a public official is entitled to qualified immunity if the plaintiff fails to establish either one, *see Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The controlling question in the "clearly established" prong of the qualified immunity analysis is whether the individual Defendants received "fair warning" that their conduct was unconstitutional. *Wade v. United States*, 13 F.4th 1217, 1225 (11th Cir. 2021). This "standard is a demanding one." *Cantu v. City of Dothan*, 974 F.3d 1217, 1235 (11th Cir. 2020). This is especially true in the context of the First Amendment. *See, e.g.*, *Gaines v. Wardynski*, 871 F.3d 1203, 1220 (11th Cir. 2017) ("It is particularly difficult to overcome the qualified immunity defense in the First Amendment context."); *Maggio v. Sipple*, 211 F.3d 1346, 1354 (11th Cir. 2000) ("[A] defendant in a First Amendment suit will only

rarely be on notice that his actions are unlawful." (quotation omitted)).

There are three methods by which a plaintiff can demonstrate that a right was clearly established. We focus primarily on the first method of the analysis, in which "the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." *Jenkins v. Talladega City Bd. of Educ.*, 115 F.3d 821, 826 n.4 (11th Cir. 1997). [2] "This method requires us to consider whether the factual scenario that the official[s] faced is fairly distinguishable from the circumstances facing [the] government official[s] in a previous case." *Gaines*, 871 F.3d at 1209 (quotation omitted). "Although existing case law does not necessarily have to be 'directly on point,' it must be close enough to have put 'the statutory or constitutional question beyond debate.'" *Id.* at 1209–10 (quoting *Ashcroft v. Al-Kidd*, 563 U.S. 731, 741 (2011)).

Sasser argues that *Healy v. James*, 408 U.S. 169 (1972), and *Papish v. Board of Curators of the University of Missouri*, 410 U.S. 667 (1973), clearly establish a First Amendment violation in this case. In doing so, he argues that *Tinker v. Des Moines Independent*

---

[2] Plaintiffs can also satisfy the "clearly established" prong by pointing to "a broader, clearly established principle that should control the novel facts of the situation," or by demonstrating that "the conduct involved in the case may so obviously violate the constitution that prior case law is unnecessary." *Terrell v. Smith*, 668 F.3d 1244, 1255 (11th Cir. 2012). Sasser does neither here.

*Community School District*, 393 U.S. 503 (1969), and *Bethel School District No. 403 v. Frazer*, 478 U.S. 675 (1986), the cases upon which the Defendants (and the district court) rely, dealt only with high school students' First Amendment rights, while *Healy* and *Papish* address college and university students' rights.

In *Healy*, the Supreme Court held that a college violated the plaintiffs' free association rights when it denied recognition of their student group. *Healy*, 408 U.S. at 170–71. Citing *Tinker*, the Court stated that "state colleges and universities are not enclaves immune from the sweep of the First Amendment." *Id.* at 180. Indeed, it recognized that the protection of First Amendment freedoms is "vital" on the campuses of colleges and universities, which represent "the marketplace of ideas." *Id.* One year later in *Papish*, the Supreme Court held that the University of Missouri violated a graduate student's First Amendment rights by expelling him for disseminating a student newspaper with an expletive-bearing headline. *Papish*, 410 U.S. at 671. The Court reaffirmed *Healy* and stated that while "a state university[ has an] undoubted prerogative to enforce reasonable rules governing student conduct," it may not "shut off" the "dissemination of ideas—no matter how offensive to good taste." *Id.* at 669–70. In so holding, it also acknowledged that universities nonetheless may apply "nondiscriminatory [and] reasonable rules governing conduct" of students. *Id.*

Sasser is correct that *Healy* and *Papish* speak to the First Amendment rights of university students. And, of course, the First Amendment protects speech that is offensive and abhorrent.

However, he has not pointed to a case from the United States Supreme Court, our Court, or the Supreme Court of Georgia in which a student was disciplined in violation of the First Amendment for using a racial slur on campus during a school-sponsored event. *See Gaines*, 871 F.3d at 1209. Both *Healy* and *Papish* are factually distinguishable from this case. *Healy* concerned the First Amendment right to free association, not the freedom of speech, and addressed formal recognition of a student group rather than the discipline of a student for his or her individual speech. *Healy*, 408 U.S. at 170–71. Likewise, *Papish* addressed the discipline of a student for distribution of a student newspaper containing what the university argued was obscenity. *Papish*, 410 U.S. at 671. The facts of that case were materially different from this case and thus cannot defeat qualified immunity.

And true, both *Tinker* and *Bethel* involved students in public high schools. The plaintiffs in *Tinker* were high school students who were disciplined for wearing black armbands in protest of the Vietnam War, *Tinker*, 393 U.S. at 504, while the plaintiff in *Bethel* was a high school student who delivered a speech riddled with "elaborate, graphic, and explicit sexual" content, *Bethel*, 478 U.S. at 678. The Supreme Court held that the school in *Tinker* violated the plaintiffs' rights by suspending them, *Tinker*, 393 U.S. at 514, but in *Bethel* upheld the plaintiff's suspension from school, *Bethel*, 478 U.S. at 686. *Tinker* "held that public schools may regulate student expression when it 'substantially interfere[s] with the work of the school or impinge[s] upon the rights of other students.'" *Doe*

*v. Valencia Coll.*, 903 F.3d 1220, 1229 (11th Cir. 2018) (quoting *Tinker*, 393 U.S. at 509). While the Court "ma[de] clear that students do not 'shed their constitutional rights to freedom of speech or expression at the schoolhouse gate,'" *Morse v. Frederick*, 551 U.S. 393, 396 (2007) (quoting *Tinker*, 393 U.S. at 506), the Court also held in *Bethel* that "the constitutional rights of students in public school are not automatically coextensive with the rights of adults in other settings," *Bethel*, 478 U.S. at 682. For those reasons, public schools are permitted to impose sanctions upon students "in response to . . . offensively lewd and indecent speech." *Id.* at 685.

Still, it is not clear to what extent *Tinker* applies to the university setting, making it all the more obvious that the law in this area is not so clearly established to put the individual Defendants on notice so as to defeat qualified immunity. Indeed, our Court has stated that "it's not at all clear that *Tinker*[ ] . . . applies in the university—as opposed to the elementary- and secondary-school—setting," acknowledging that the caselaw in this area "sends mixed signals." *Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1127 n.6 (11th Cir. 2022). Still, Sasser has not pointed to a factually similar case that "truly compels . . . the conclusion . . . that [the] Defendant[s] violated [his] federal rights." *Evans v. Stephens*, 407 F.3d 1272, 1282 (11th Cir. 2005) (*en banc*).

We therefore conclude that the district court did not err in dismissing Sasser's second amended complaint because, even if the individual Defendants did violate Sasser's rights, as he alleged,

those rights were not clearly established, so they were entitled to qualified immunity.

## III.    Conclusion

For these reasons, the district court did not err in dismissing Sasser's second amended complaint.  Accordingly, we affirm.

**AFFIRMED.**