**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————————

No. 25-11242

Non-Argument Calendar

————————————————

PATRICIA SPURLIN,

*Plaintiff-Appellant,*

*versus*

FLOYD COUNTY, GEORGIA,

AKYN BECK,

   in her individual capacity,

COUNTY MANAGER, FLOYD COUNTY GEORGIA,

*Defendants-Appellees.*

————————————————

Appeal from the United States District Court

for the Northern District of Georgia

D.C. Docket No. 4:24-cv-00072-WMR

————————————————

Before ROSENBAUM, BRANCH, and ABUDU, Circuit Judges.

PER CURIAM:

Patricia Spurlin brought this lawsuit, alleging that Akyn Beck terminated Spurlin from her job at the Floyd County Elections Office in retaliation for an anonymous complaint about a coworker who was related to Beck. Spurlin had not sent the complaint, but about a week after Beck learned of the complaint, she ended Spurlin's employment. Spurlin's resulting lawsuit against Beck, county manager Jamie McCord, and Floyd County alleged unlawful retaliation under the First Amendment and the Georgia Whistleblower Act. The district court dismissed Spurlin's First Amendment claims, finding that Beck should receive qualified immunity and that Spurlin failed to adequately allege a claim against McCord in his official capacity. On both counts, the district court determined that Spurlin had not shown a clearly established constitutional violation because she had not alleged any actual words or actions on her part that led to her termination. The court then dismissed the Georgia law claim without prejudice.

After careful review, we vacate the dismissal of Spurlin's complaint and remand for further proceedings.

### I.    Background[1]

According to the complaint, Patricia Spurlin began working as an Election Clerk for the Floyd County Board of Elections and Registration in May 2020. Although she was a temporary worker

---

[1] At the motion to dismiss stage, we "accept[] the complaint's factual allegations as true and constru[e] them in the light most favorable to the plaintiff[]." *Otto Candies, LLC v. Citigroup Inc.*, 137 F.4th 1158, 1177 (11th Cir. 2025).

placed in that position by Express Employment Services, Spurlin worked full time for the Board of Elections for almost three years, during which time the Board of Elections was completely responsible for her supervision. Express Employment issued Spurlin's paychecks, but the Board of Elections handled everything else: it "supervised and oversaw all of her work product; controlled the means and manner of her work; provided her worksite, materials, equipment, and supplies"; signed off on her timecards; and ultimately made the decision to terminate her employment.

Akyn Beck became the Elections Supervisor for the Board of Elections in September 2022. As such, she supervised Spurlin's work and reviewed and signed off on her timecards. Beck seemed happy with Spurlin's work; in fact, shortly after Beck entered the role, she proposed that Spurlin consider a permanent position with the Board of Elections and promised Spurlin "she would work on it."

A couple of months later, Beck—through Express Employment—hired her fiancé's brother, Isaiah Beck, as an equipment technician.[2] Spurlin soon noticed that Isaiah didn't seem to keep to the normal office hours of 8 a.m. to 5 p.m. He would "routinely" come in late and leave early, and some days he did not show up at all. Spurlin and her other coworkers would often have to "go to the front window" of the office "to address visitors and citizens" because Isaiah was not at his post there. And

---

[2] At the time of these events, it appears that Beck was unmarried and went by her maiden name Akyn Bailey.

once, he used several hours to get a new tattoo "while billing the County for his time."

As far as Spurlin could tell, Beck was aware of Isaiah's behavior. On some occasions, "Isaiah and Beck [left] the office at the same time" and then "return[ed] to the office at the same time hours later—and sometimes, neither one returned to the office at all."

Despite Isaiah's frequent tardiness and absenteeism, he continued to report full 45-hour weeks on his Express Employment timecards, which Beck approved. Spurlin was in a position to know, because both Beck and Beck's predecessor often asked Spurlin to deliver all the approved timecards to Express Employment. But Spurlin's coworkers were also aware of the situation, and "they were all concerned that [Isaiah] was fraudulently claiming—and getting paid by the County for—hours that he did not work."

Sometime around March 14, 2023, another county employee warned Spurlin to "watch [her] back[] because Beck was livid about an anonymous complaint sent to the County." Spurlin had not sent the complaint, although she was aware that someone was considering making an anonymous complaint about Isaiah to the county's human resources director. But on March 17, Beck called Spurlin to a meeting with Beck and the assistant to the county manager. Beck told Spurlin "she had been doing a great job and appreciated all her hard work but . . . they did not need her anymore and they were letting her go."

Spurlin called the owner of Express Employment that same day, who was "shocked that she was fired." A short time later, after speaking to the county's human resources director, the Express Employment owner asked Spurlin "if she wrote the anonymous complaint and told her that Beck was livid about it." He also let Spurlin know that the anonymous complaint had been handed up the chain to the county manager, Jamie McCord.

Spurlin sued Beck in her individual capacity, McCord in his official capacity, and Floyd County, Georgia, bringing three claims: (1) First Amendment retaliation pursuant to 42 U.S.C. § 1983 as to Beck, (2) First Amendment retaliation pursuant to § 1983 as to McCord, and (3) retaliation under the Georgia Whistleblower Act as to Floyd County. Defendants moved to dismiss the complaint for failure to state a claim, and the district court granted their motion.

On the First Amendment claim against Beck, the district court concluded that qualified immunity was appropriate because Spurlin had not alleged a clearly established constitutional violation. The court determined existing law clearly established that an employer's retaliation based on a mistaken belief her employee had engaged in protected activity was a constitutional violation only when the employee had engaged in some affirmative conduct leading to the mistake. Since Spurlin had not said or done anything to give rise to Beck's alleged mistake, the court concluded she did not have a clearly established right against retaliation.

The court similarly concluded that because Spurlin had not demonstrated a violation of a "clearly established constitutional right," the First Amendment claim against McCord failed. The court then dismissed the remaining state law claim without prejudice because there was no remaining basis for federal subject matter jurisdiction. Spurlin timely appealed.

## II.    Standard of Review

"We review a dismissal for failure to state a claim de novo, accepting the complaint's factual allegations as true and construing them in the light most favorable to the plaintiffs." *Otto Candies, LLC v. Citigroup Inc.*, 137 F.4th 1158, 1177 (11th Cir. 2025). "To prevent dismissal under [Federal Rule of Civil Procedure] 12(b)(6), the plaintiff must allege sufficient facts to state a claim for relief that is 'plausible on its face.'" *Moore v. Cecil*, 109 F.4th 1352, 1365 (11th Cir. 2024) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## III.    Discussion

Spurlin challenges each of the district court's conclusions. First, she argues that her allegations against Beck, if true, would constitute a clearly established First Amendment violation, so qualified immunity is not appropriate. Second, Spurlin argues that because she alleged a constitutional violation along with the other elements needed prove a claim against a county official in his official capacity, the district court erred in dismissing her claim against McCord.

Defendants respond that the court was correct to dismiss Spurlin's claim against Beck because any possible constitutional violation was not clearly established. They further contend that Beck's alleged actions did not, in any event, violate the First Amendment. As to McCord, Defendants argue that Spurlin's claim fails because there was no constitutional violation and because Spurlin's other allegations would fail to plausibly make McCord liable in his official capacity.

The threshold question in both claims is whether a government official violates the First Amendment when she retaliates against an employee based on a mistaken belief that the employee engaged in protected speech, even when the employee took no affirmative action to cause the mistaken belief. We conclude the answer is yes, and that principle has been clearly established. We thus refrain from reaching the remaining questions and instead remand for the district court to consider them in the first instance.

A.    *The retaliation claim against Beck*

Spurlin argues that Beck is not entitled to qualified immunity because it is clearly established that a government employer may not retaliate against an employee for protected speech. Spurlin contends that although she did not in fact engage in protected speech here, it is enough that Beck believed she had and that belief motivated Beck's decision to terminate her. Spurlin further argues that the speech Beck believed Spurlin engaged in was protected speech under the *Pickering* framework, which allows

the government leeway to regulate employee speech in some instances. *See Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968). Beck responds that there was no clearly established law sufficiently particularized to the facts of this case to put Beck on notice that her alleged actions violated the First Amendment. We agree with Spurlin that she can bring a First Amendment retaliation claim even if she did not actually send the anonymous complaint that allegedly led to her termination and took no action that caused Beck to think she did. We remand for consideration of whether that complaint was protected speech.

"Qualified immunity shields public officials from liability for civil damages when their conduct does not violate a constitutional right that was clearly established at the time of the challenged action." *Jarrard v. Sheriff of Polk Cnty.*, 115 F.4th 1306, 1323 (11th Cir. 2024) (quotation omitted). If a government official was acting in the scope of her discretionary authority when the alleged conduct occurred, the plaintiff must show "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Id.* (quotation omitted). A plaintiff may prove that a law was "clearly established" by (1) offering a "materially similar case [that] has already been decided," (2) "point[ing] to a broader, clearly established principle that should control the novel facts of the situation," or (3) demonstrating that "the conduct involved in the case . . . so obviously violate[s] the constitution that prior case law is unnecessary." *Gaines v. Wardynski*, 871 F.3d 1203, 1209 (11th Cir. 2017) (quotation omitted).

The parties do not dispute that Beck acted within her discretionary authority when she fired Spurlin.  They disagree, however, whether Beck's alleged conduct clearly constituted unlawful retaliation under the First Amendment.

A First Amendment retaliation claim requires a plaintiff to show that "(1) her speech was constitutionally protected; (2) she suffered adverse conduct that would likely deter a person of ordinary firmness from engaging in such speech; and (3) there was a causal relationship between the adverse conduct and the protected speech." *Brannon v. Finkelstein*, 754 F.3d 1269, 1274 (11th Cir. 2014).

In the past, courts disputed whether a plaintiff could bring a claim based on her "*perceived*" rather than "*actual*" exercise of constitutional rights.  *Heffernan v. City of Paterson*, 578 U.S. 266, 270 (2016) (emphasis in original) (quotation omitted).  But in *Heffernan v. City of Paterson*, the Supreme Court resolved that question, concluding that

> [w]hen an employer demotes an employee out of a desire to prevent the employee from engaging in political activity that the First Amendment protects, the employee is entitled to challenge that unlawful action under the First Amendment and 42 U.S.C. § 1983—even if . . . the employer makes a factual mistake about the employee's behavior.

*Id.* at 273.

In *Heffernan*, the Supreme Court considered a police officer's claim that he had been demoted for engaging in protected political activity. *Id.* at 268. During a mayoral election season, members of the police force saw Heffernan picking up a campaign sign and interacting with campaign staff for a candidate whom his supervisors opposed. *Id.* at 269. Unbeknownst to the supervisors, Heffernan was not actually involved in the campaign and had been picking up the sign at his mother's request. *Id.* But based on the supervisors' mistaken belief that Heffernan was "overt[ly] involve[d]" in the campaign, they demoted him from detective to a "walking post." *Id.* Heffernan sued them, claiming his supervisors "demoted him because he had engaged in conduct that (on their mistaken view of the facts) constituted protected speech." *Id.*

The Supreme Court determined that "the government's reason for demoting Heffernan is what counts." *Id.* at 273. The First Amendment prohibits any law "abridging the freedom of speech," *id.* (quoting U.S. Const. amend. I), and retaliatory action such as this would "discourag[e] employees—both the employee discharged . . . and his or her colleagues—from engaging in protected activities," *id.* Consequently, "a discharge or demotion based upon an employer's belief that the employee has engaged in protected activity can cause the same kind, and degree, of constitutional harm whether that belief does or does not rest upon a factual mistake." *Id.* at 274.

*Heffernan* controls our decision here. In 2016, before the events Spurlin recounts, the Supreme Court clearly established that an employee can bring a First Amendment retaliation claim *even if* the employer was mistaken about whether the employee actually engaged in protected activity: the employer's motive is what matters. Thus, Beck's alleged decision to fire Spurlin because of Spurlin's perceived speech violates the First Amendment (if that speech is protected speech)—even if Beck was mistaken and Spurlin never spoke at all.

Beck argues that there are factors distinguishing this case from *Heffernan* such that *Heffernan* does not control this set of facts or, at a minimum, does not clearly establish that Beck's alleged actions violated the Constitution. Beck contends that "the law announced in *Heffernan* is not sufficiently particularized to the facts of this case to clearly establish the law."

First, Beck highlights that "the employee in *Heffernan* actually engaged in conduct which was misperceived as protected activity, whereas Spurlin engaged in no protected conduct whatsoever." This was the argument the district court relied on, reasoning that "it appears [from *Heffernan*] that the employee must actually do something that the employer misperceives as a protected activity." The court relied on the following statement from *Heffernan*: "In a case like this one, the employee . . . will have to point to *more than his own conduct* to show an employer's intent to discharge or to demote him for engaging in what the employer (mistakenly) believes to have been different (and protected)

activities."[3]   *Heffernan*, 578 U.S. at 274 (emphasis added by the district court).  On the district court's reading, the *Heffernan* Court "held that it was the employer's motive that mattered, but the motive in that case was based on the employer's misperception of the employee's actual conduct, thereby implicating the employee's own First Amendment rights."  So, the district court concluded, because Spurlin "made no statements at all," *Heffernan*'s "factual scenario is not present in this case."

To the contrary, the *Heffernan* Court's holding did not turn on whether the employee had engaged in actual conduct but on "improper employer motive."  *Id.*  The language the district court relies on did not limit or qualify *Heffernan*'s holding.  Instead, it comes from the Court's explanation that employees might sometimes find it more difficult to prove unlawful retaliation in cases involving an employer's mistake.  *See id.*  In a normal case, a plaintiff can rely on evidence of her own actions to show protected First Amendment activities, but in a case involving mistake, she will have to offer "more than [her] own conduct" to prove improper motive.  *Id.*

Neither Beck nor the district court has identified a single court that has understood *Heffernan* the way they propose.  A survey of the various federal appellate court decisions discussing

---

[3] The district court's opinion purports to continue the *Heffernan* quote as follows: ". . . based on an employer's misperception of the *employee's conduct*."  *Heffernan*, however, does not contain this language, nor did it originate in the parties' briefing below.

25-11242                Opinion of the Court                13

and applying *Heffernan* demonstrates that there is no confusion: *Heffernan* applies to facts like these. Two of our sister circuits have squarely addressed cases with parallel facts and have unquestioningly applied *Heffernan*.[4] And other courts have cited *Heffernan*'s rule in passing without raising any similar caveats. *See, e.g., Molina v. City of St. Louis*, 59 F.4th 334, 342–43 (8th Cir. 2023) (recognizing the *Heffernan* rule but noting it could not defeat qualified immunity because it was decided *after* the challenged conduct took place); *Stilwell v. City of Williams*, 831 F.3d 1234, 1240 (9th Cir. 2016) (describing *Heffernan* as "holding that whether the protected speech was actually engaged in by the employee is not determinative because it is the perception of the employer as to

---

[4] The Sixth Circuit considered a qualified immunity case where a plaintiff alleged he had faced negative employment outcomes because his supervisors believed he had leaked certain information to the media, although he was not actually the leaker. *DeCrane v. Eckart*, 12 F.4th 586, 591–92 (6th Cir. 2021). The court recognized that the Supreme Court had answered "yes" to the question of whether "public employees have a right not to be disciplined for *perceived* speech that they do not engage in." *Id.* at 594 (emphasis in original). Similarly, in *Bird v. West Valley City*, the Tenth Circuit asserted, "*Heffernan* clearly governs Plaintiff's First Amendment retaliation claim, for Plaintiff was a public employee who claims her municipal employer discharged her based on its belief that she engaged in constitutionally protected activity." 832 F.3d 1188, 1212 (10th Cir. 2016). The court noted that the plaintiff's superiors "actually believed [she] leaked statements to the press," so "as long as [they] fired [her] based on this belief, then [her] denial that she was the source of these leaks is not fatal to her claim." *Id.*

whether that protected activity occurred that matters to a First Amendment retaliation claim").[5]

Second, Beck argues that *"Heffernan* was decided in the context of the First Amendment's protection of the right to political affiliation," while this case deals with protected speech. Again, though, the Court's decision was clearly not cabined to the political association context. While political campaigning was the potentially protected activity at issue in *Heffernan*, Heffernan brought a "free-speech retaliation claim," *Heffernan*, 578 U.S. at 270 (quotation omitted), and the Court's discussion centered on cases dealing with "protected speech," *id.* at 271–72.[6] In reaching its ultimate conclusion, the Court invoked the "freedom of speech." *Heffernan*, 578 U.S. at 273.[7]

---

[5] The district court cites a string of cases for the proposition that "a plaintiff cannot maintain a First Amendment retaliation claim based on misperception if the plaintiff did not make the misperceived speech at issue." But, as the district court notes, all were decided before *Heffernan*.

[6] Beck's suggestion that the *Heffernan* Court disclaimed application of its rule to public-employee speech cases is misguided. The *Heffernan* Court "set aside" *Pickering* and its progeny in its analysis only in that it determined they did not directly speak to the factual mistake issue. *See Heffernan*, 578 U.S. at 271.

[7] The Supreme Court's discussion of speech and political association together tracks the Court's fundamental understanding of the "freedom of [expressive] association . . . as an indispensable means of preserving other individual liberties," namely, "those activities protected by the First Amendment," including "speech." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 618 (1984); *see O'Laughlin v. Palm Beach County*, 30 F.4th 1045, 1053 (11th Cir. 2022) (discussing this understanding of freedom of association).

Spurlin has "point[ed] to a broad[], clearly established principle that . . . control[s] the novel facts of [this] situation." *Gaines*, 871 F.3d at 1208 (quotation omitted). "[I]dentical facts [are] not essential for the law to be clearly established"; "[a]uthoritative judicial decisions may establish broad principles of law that are clearly applicable to the conduct at issue." *Gates v. Khokar*, 884 F.3d 1290, 1298 (11th Cir. 2018) (quotations omitted). The *Heffernan* Court clearly decided that the constitutional concerns related to First Amendment retaliation were the same "whether [the plaintiff] did or did not in fact engage in [protected] activity." 578 U.S. at

---

Beck points to a statement from an unpublished Third Circuit decision, *Falco v. Zimmer*, 767 F. App'x 288, 314 (3d Cir. 2019), for the proposition that *Heffernan* does not apply to free speech cases. But that interpretation misreads the Third Circuit's analysis. *Falco* did not raise any issue related to perceived versus actual speech. *See generally id.* Instead, the plaintiff "attempt[ed] to undermine the ordinary firmness standard used in determining whether a public employee's protected activity was a substantial or motivating factor in the employer's retaliation" by pointing to language from *Heffernan* that unlawful retaliatory actions need not actually coerce the employee into changing his political affiliation. *Id.* at 314 (citing *Heffernan*, 578 U.S. at 273). The Third Circuit declined to relax the "ordinary firmness" standard based on language pulled from "a factually similar case" (in that both *Falco* and *Heffernan* dealt with First Amendment retaliation) "that turns on an entirely separate legal question." *Id.* at 315.

Beck also relies on *Avant v. Doke*, an unpublished Tenth Circuit decision, reading it to mean that without that circuit's previously decided *Bird* decision (discussed above), *Heffernan*'s application to free speech cases would be unclear. No. 21-7031, 2022 WL 2255699, at *6–7 (10th Cir. June 23, 2022). To the contrary, the Tenth Circuit discussed *Heffernan* fully and concluded that "*Heffernan* recognized a public employee's First Amendment protection from retaliation for perceived speech," all before it ever addressed *Bird*. *Id.* at *7.

273. We thus conclude that the fact that Spurlin did not engage in the expressive activity for which she alleges she was fired does not defeat her First Amendment claim.

This conclusion does not end the qualified immunity analysis. Under the *Pickering* framework, government employers have some leeway in regulating the speech of their employees because "the State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general." *Jarrard*, 115 F.4th at 1316 (quoting *Pickering*, 391 U.S. at 568). Spurlin must demonstrate that the perceived speech—the anonymous complaint—was protected speech. We remand to the district court to determine whether, under the *Pickering* framework, Spurlin's speech would have been constitutionally protected if she had sent the anonymous complaint.

## B.     *The retaliation claim against McCord*

Spurlin argues that because Beck's alleged actions constituted unlawful First Amendment retaliation, the claim against McCord should survive as well. McCord responds that even if Spurlin establishes a constitutional violation, her claim against McCord fails because she has not sufficiently alleged municipal liability for Beck's actions.

"Claims against individuals in their official capacities" are "to be treated as a suit against the entity" of which the "officer is an agent." *Rodemaker v. City of Valdosta Bd. of Educ.*, 110 F.4th 1318,

1328 (11th Cir. 2024) (quotations omitted). "[T]o impose § 1983 liability on a municipality, a plaintiff must show: (1) that [her] constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). The district court determined that Spurlin failed the first prong and thus did not reach the second two prongs of the analysis.[8] Because we find that Spurlin has alleged that Beck violated her constitutional rights, the first prong is met. We remand to the district court to assess whether Spurlin plausibly alleged the remaining two prongs.

## IV.    Conclusion

For these reasons, we vacate the district court's dismissal of Spurlin's claims and remand for further proceedings consistent with this opinion.[9]

---

[8] The district court concluded that the claim against McCord failed because "Spurlin has failed to show a violation of a clearly established right under the First Amendment." "[A] municipality is not entitled to the shield of qualified immunity from liability under § 1983," *Brandon v. Holt*, 469 U.S. 464, 473 (1985), so the question here is whether Spurlin has alleged a constitutional violation, not whether that violation has been clearly established. *See also Kimberly Regenesis, LLC v. Lee County*, 64 F.4th 1253, 1259 (11th Cir. 2023) (noting that the qualified immunity defense "do[es] not belong to the governmental entity" (quotation omitted)).

[9] The district court should also reconsider jurisdiction over the state law whistleblower claim in light of its resulting conclusions.

**VACATED AND REMANDED.**